weight of authority is to the effect that the expenditures here contemplated come within the meaning of park purposes. In support of this holding we cite the following authorities: City of Wichita v. Clapp, 125 Kan. 100, 263 P. 12, 63 A.L.R. 478; Schmoldt v. Oklahoma City, 144 Okl. 208, 291 P. 119; Vale v. City of San Bernardino, 109 Cal.App. 102, 292 P. 689; Bryant v. Logan, 56 W.Va. 141, 49 S.E. 21, 3 Ann.Cas. 1011; State v. Dodge City, 123 Kan. 316, 255 P. 387; Spires v. City of Los Angeles, 150 Cal. 64, 87 P. 1026, 11 Ann.Cas. 465; Los Angeles Athletic Club v. City of Long Beach, 128 Cal.App. 427, 17 P.(2d) 1061; Laird v. City of Pittsburgh, 205 Pa. 1, 54 A. 324, 325, 61 L.R.A. 332; Furlong v. South Park Commissioners, 320 Ill. 507, 151 N.E. 510.

We quote with approval the following from the opinion in the Laird Case, supra:

"A public park, in the popularly accepted meaning of the present time, may be comprehensively defined as a public pleasure ground. The definitions by the lexicographers do not vary much from this. Worcester calls it 'a piece of ground inclosed for public recreation or amusement'; Webster, 'a piece of ground, in or near a city or town, inclosed and kept for ornament and recreation'; the Century Dictionary, 'a piece of ground, usually of considerable extent, set apart and maintained for public use, and laid out in such a way as to afford pleasure to the eye as well as an opportunity for open-air recreation.' No doubt the idea of open air and space, with the land kept in grass and trees, as if approximately in the state of nature, still inheres in the general understanding of the word, but it is no longer the dominating thought, as it formerly was. * * *

"With the change of manners and habits of the people came also a change in their associations with the use of words. The idea of a public park in or near a city as a place of resort of the people generally for recreation and amusement necessarily banished the idea of a home for wild beasts of the chase, even in a very modified state of nature. The trimming away of thickets and underbrush, the substitution of regular pathways, paved, and perhaps railed and artificially lighted, which would have been incongruous to our forefathers, now enter into the accepted idea of a park. The growth of sen-

timent for artistic adornment of public grounds and buildings is part of the history of our time and country. Public parks have come to be recognized as not only the natural place for walks and drives afoot, awheel, or with horse and carriage, for boating, skating, and other outdoor athletics, but also as the appropriate and most effective location for monuments and statues, either to historic heroes or to pure art, fountains, flower displays, botanical and zoological gardens, museums of nature and of art, galleries of painting and sculpture, music stands and music halls, and all other agencies of æsthetic enjoyment of eye and ear. The parks of cultivated Europe are filled with works of art, and the great cities of this country are following fast in the same direction. Schenley Park in Pittsburg, with which this case is immediately concerned, already devotes a portion of its space, as found by the court below, to the Phipps Conservatory of flowers, to music stands, and to the Carnegie Free Library Building, as well as to athletic grounds and a race course. The Carnegie Free Library Building, as also found by the court below, contains a free library, an art gallery, museum, and music hall, all free to the public."

From what we have said it is evident that we answer question No. 1: "Yes."

Our answer to question No. 1 renders it unnecessary to answer questions Nos. 2 and 3.

**STATE v. CARPENTER et al.**

**Motion No. 12280; No. 1911—6460.**

Commission of Appeals of Texas, Section A.
Feb. 19, 1936.

For former opinion, see 89 S.W.(2d) 194.

John B. McNamara and W. L. Eason, both of Waco, for the State.

Bryan & Maxwell and Stansell Bryan, all of Waco, for defendants in error.

GERMAN, Commissioner.

In motion for rehearing by defendant in error, our attention is called to the fact that there was an inadvertent omission of certain words in the definition of market value. The definition should have been as follows:

You are instructed that the term "market value" is the price the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying.

Our attention is further called to the fact that in this instance there were certain improvements upon the 8.03 acres of land which, it is stated, it was necessary for the owner to remove, and that he incurred expenses in doing so. We are called upon to say that he should be allowed a recovery of this item as a separate item of damages. It is significant to note that this item appears to have been taken care of on the former trial by being taken into consideration in connection with the depreciation of the value of the land. There was no special issue covering this item. The trial court, after charging the jury that they might take into consideration "the reasonable cost of removing and reestablishing improvements from the right of way," cautiously added, "but these matters can only be considered by you as affecting the market value of the land, if they do affect it."

It is a general rule that improvements situated upon the portion of land taken are to be considered as a part of the realty. They ordinarily have no market value separate from the land. Therefore, when such improvements are taken or destroyed their value can be reflected in the finding as to the value of the land taken, and evidence of their value is admissible for that purpose. As an alternative, however, if the improvements which are situated upon the portion of land taken are essential to the use and enjoyment of the remainder of the land, or if their replacement, by removal or reconstruction, is nec-

essary in order to obviate depreciation in the value of the residue, the cost of removal, and/or reconstruction and/or replacement may be a proper inquiry in connection with the issue of diminished market value of the remainder. See State v. Lowrie (Tex.Civ.App.) 56 S.W.(2d) 676.

■ The better general rule with reference to fences, which may also be applied to certain other improvements, is stated in 2 Lewis on Eminent Domain, § 498, in this language: "Where, by taking a part of a tract, additional fencing will be rendered necessary in order to the 'reasonable use and enjoyment of the remainder, as it probably will be used in the future, and the burden of constructing such additional fence is cast upon the owner of the land, then the burden of constructing and maintaining such fence, in so far as it depreciates the value of the land, is a proper element to be considered in estimating the damages. * * * It is a question of damage to the land, as land. If, in view of the probable future use of the land, additional fencing will be necessary, of which the jury or commissioners are to judge, and the owner must construct the fence if he has it, then the land is depreciated in proportion to the expense of constructing and maintaining such fencing. Nothing can be allowed for fence, as fence. The allowance should be for the depreciation of the land in consequence of the burden thus cast upon it."

See, also, cases cited in annotation at pages 455–458 of 10 A.L.R.

■ This opinion must not be construed as attempting to furnish an inflexible rule to be followed in all similar cases. The main purpose of this general discussion has been to emphasize the necessity of obviating, as nearly as possible, the submission of specific items of damages in condemnation cases, and to avoid elaborate instructions by trial courts as to matters which may or may not be taken into consideration in arriving at the ultimate question of depreciation in the market value of the remainder of the tract of land when a part has been taken. Fair and just compensation to the owner for the land condemned and for damages to the remainder is the end sought to be attained. We realize that this result cannot be reached in every case by following the general rules here outlined. If in the exercise of a sound discretion the trial court should find that just compensation, from the standpoint of the condemnor as well as the owner, cannot be arrived at without directing attention to specific items of damages, either by instructions or in special issues, such action need not necessarily be erroneous, so long as a double recovery is avoided and undue emphasis is not placed upon some specific item of damages or injury.

■ We have again carefully considered the question of the proper method of submitting the issue of value of the tract of land taken, and are still of the conclusion that, when damages are sought because of depreciation in the market value of the remainder of the tract, the proper method of submitting the question is as stated in our original opinion. If it be true, as argued by counsel in this case, that the 8.03 acres of land taken was, when considered as a part of the farm, worth $100 per acre, it necessarily follows that the value of the farm as a whole included the sum of $803 by reason of this 8.03 acres being included therein. If, after the land was severed from the tract, the 8.03 acres was worth, as severed land, only $100, it must follow, it seems to us, that, when proof was made of this fact, a jury would necessarily conclude that the value of the balance of the farm had been diminished $703 by reason of the severance of the strip alone. If the value of the remainder has been increased by reason of other things, the owner has no right to complain, because it is well settled that damages to the remainder may be offset by benefits such as are allowed by law. At the same time, with a finding as to the intrinsic value of the part taken, the owner's right to the just compensation guaranteed by the Constitution is protected, regardless of benefits. This, in the last analysis, appears to be the controlling reason for submitting the question as to value of the part taken as a separate issue. In a large majority of the states the rule adopted for ascertaining just compensation is to determine the depreciation, if any, in the value of the farm as a whole as a result of the condemnation and construction of the improvements.

The motion for rehearing by defendants in error is overruled.

Opinion approved by the Supreme Court.