

# THE ATTORNEY GENERAL

# OF TEXAS

AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

May 28, 1949

Hon. Arnold W. Franklin
County Attorney
Atascosa County
Jourdanton, Texas

Opinion No. V-831

Re: Authority to pay for the
construction of fences on
rights-of-way for new county
roads from the permanent
improvement fund.

Dear Sir:

Your request for an opinion is substantially as follows:

"The Commissioners' Court and County Treasur-
er have been using funds from what is commonly
known as the 'permanent improvement fund' as
described in Article 8, Section 9, of the Consti-
tution of the State of Texas, and Article 2352, Re-
vised Civil Statutes of Texas, for the purpose of
purchasing materials and supplies used in the
construction of fences, fencing right-of-way to
new county roads and State highways within the
county. . . .

"Question 1. Can the Commissioners' Court pay
for such expenditures above stated out of the fund
created by the levy of a tax of twenty-five cents
(25¢) on the one hundred dollar ($100.00) valua-
tion for the 'erection of public buildings, streets,
sewers, water works and other permanent im-
provements'? If so, can the Commissioners'
Court pay out of such fund the cost of acquiring
new right-of-way for new county roads or high-
ways or the cost of building such new roads or
highways?"

Section 9, Article VIII of the Constitution of Texas reads in part:

". . . and no county, city or town shall levy more than twenty-five cents for city or county purposes, and not exceeding fifteen cents for roads and bridges, and not exceeding fifteen cents to pay jurors, on the one hundred dollars valuation . . . and for the erection of public buildings, streets, sewers, water works, and other permanent improvements, not to exceed twenty-five cents on the one hundred dollars valuation, in any one year, and except as is in this Constitution otherwise provided; and the Legislature may also authorize an additional annual ad valorem tax to be levied and collected for the further maintenance of the public roads; provided, that a majority of the qualified property tax-paying voters of the county voting at an election to be held for that purpose shall vote such tax not to exceed fifteen cents on the one hundred dollars valuation of the property subject to taxation in such county. . ."

It is well settled that the Commissioners' Court cannot levy a tax for one purpose and use it for another purpose. Carroll v. Williams, 109 Tex. 155, 202 S.W. 504 (1918); Ault v. Hill County, 102 Tex. 335, 116 S. W. 359 (1909); Sanders v. Looney, 225 S. W. 280 (Tex. Civ. App. 1920).

In Carroll v. Williams the court stated:

". . . By necessary implication said provisions of Section 9 of Article 8 were designed, not merely to limit the tax rate for certain therein designated purposes, but to require that any and all money raised by taxation for any such purpose shall be applied, faithfully, to that particular purpose, as needed therefor, and not to any other purpose or use whatsoever. . . ."

It is assumed from your factual situation (and you have since verbally informed us) that you contemplate caring for fences necessarily purchased or taken or required to be erected by reason of condemnation proceedings in obtaining rights-of-way for county roads and State Highways. In the case of Morris v. Coleman County, 28 S. W. 380 (Tex.Civ.App., 1894), the court said:

> "The court below admitted testimony of the cost of the fences built, whether they were required to be built under the circumstances, whether the expense of building was reasonable, and the jury must have considered the same in estimating the damages. We think, however, that the cost of building the fences that were actually built by the owner was not the issue, but the reasonable cost of sufficient fences to enable the owner to enjoy his land in uses to which it was adapted, and to which he had applied it, was the issue."

In the case of State v. Carpenter, 89 S. W. 2d 979 (Comm. App. 1936) the court said:

> "The better general rule with reference to fences, which may also be applied to certain other improvements, is stated in 2 Lewis on Eminent Domain, § 498, in this language: 'Where, by taking a part of a tract, additional fencing will be rendered necessary in order to the reasonable use and enjoyment of the remainder, as it probably will be used in the future, and the burden of constructing such additional fence is cast upon the owner of the land, then the burden of constructing and maintaining such fence, in so far as it depreciates the value of the land, is a proper element to be considered in estimating the damages. * * * It is a question of damage to the land, as land. If in view of the probable future use of the land, additional fencing will be necessary of which the jury or commissioners are to judge, and the owner must construct the fence if he has it, then the land is depreciated in proportion to the expense of constructing and maintaining such fencing. Nothing can be allowed for fence, as fence. The allowance should be for the depreciation of the land in consequence of the burden thus cast upon it."

It will be seen from the foregoing that the county cannot actually pay for fencing rights-of-way for adjoining landowners adjacent to new county roads or highways regardless of whether the county acquired the same by purchase or by condemnation proceedings. This item can be considered only in estimating the damages to the land. In that event, it is not the actual cost of the fence but the reasonable cost of the fence to enable the owner to enjoy his land for uses to which it was adapted. It necessarily follows that the cost of fencing would be computed as an item of damage by the Commissioners' Court when it purchases the land or when the same is taken by condemnation and the property owner must be compensated with the fund or funds set aside for the acquisition of rights-of-way.

A careful review of the opinions of this office reveals that regardless of whether a right-of-way is secured by outright purchase or by condemnation proceedings, the right-of-way can be paid for only out of a road bond fund expressly voted for that purpose or out of the Road and Bridge Fund of the county. Atty. Gen. Op. No. 0-413, March 16, 1939; Atty. Gen. Op. No. 0-5422, July 1, 1943; Atty. Gen. Op. No. 0-7465, Nov. 8, 1946; Atty. Gen. Op. No. V-45, February 25, 1947; Atty. Gen. Op. No. V-223, May 28, 1947.

Therefore, it is our opinion that the county has no authority to pay for a fence as such fence, but when the same is properly considered as an element of damage in securing the right-of-way the landowner can only be compensated from the same fund used for the acquisition of rights-of-way. In no event can the Permanent Improvement Fund be used for the purpose of purchasing materials and supplies to be used for the fencing of rights-of-way for adjacent landowners on new county roads and highways as the use of such fund for said purpose would clearly contravene the provisions of Article 8, Section 9 of the Texas Constitution.

## SUMMARY

The Permanent Improvement Fund, a constitutional county fund, may not be utilized for the purpose of

purchasing materials and supplies in the construction of fences for adjacent landowners on rights-of-way on new county roads and highways.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

BY

Burnell Waldrep
Assistant

BW:et

APPROVED

FIRST ASSISTANT
ATTORNEY GENERAL