**Jerry JACKSON et ux., Appellants,**

**v.**

**The STATE of Texas, Appellee.**

**No. 17263.**

Court of Civil Appeals of Texas.

Dallas.

April 25, 1969.

Rehearing Denied May 23, 1969.

Mitchell D. Stevens, Dallas, for appellants.

David A. Thomas, Asst. Atty. Gen., Austin, for appellee.

CLAUDE WILLIAMS, Justice.

This is a condemnation case. In order to obtain the right of way for Interstate Highway 635 at its intersection with Interstate Highway 20 in Dallas County, Texas, the State of Texas condemned a tract of land containing 5,995 square feet out of a larger tract of 30,745 square feet owned by Jerry Jackson and his wife. The Special Commissioners awarded the sum of $31,500 which sum was tendered by the State of Texas and withdrawn and accepted by the Jacksons and others claiming an interest in such funds.

In due time the State of Texas filed its objections to the award of the Special Commissioners and issue was duly joined by Jackson and his wife, First National Bank of Mesquite, Texas and the intervenor, Southwestern Financial Corporation. During the trial before the court and a jury the parties entered into a stipulation wherein it was agreed that the State of Texas had the right to take the property in question and that the date of taking was March 22, 1966. At the conclusion of the introduction of testimony the trial court submitted to the jury the three standard issues proposed in State v. Carpenter, 126 Tex. 604, 89 S.W.2d 979 (1936). In answer to these issues the jury found (1) that the market value of the property taken, at the time it was condemned, considered as severed property, was $16,650; (2) that the market value of the remainder of

the property immediately before condemnation was $28,650; and (3) that the market value of the remainder of the property taken immediately after the taking was $23,565. Based upon this verdict the court rendered judgment finding the compensation for the property to be the sum of $21,735, representing $16,550 for the value of the property taken and $4,085 as damages to the remainder. The judgment reduced the award of the Special Commissioners from $31,500 to $21,735 and ordered Jackson and wife to pay to the State of Texas the sum of $9,765 with interest from date of judgment. Jackson and wife are the only parties who have perfected their appeal from this judgment.

Appellants seek reversal of the trial court's judgment based upon five points of error. In their first three points of error appellants charge that the court erred in entering judgment on the jury's answers to Special Issues 1, 2 and 3 "for the reason that said answer was given upon improper testimony admitted by this Court." In their fourth point of error appellants charge that the court erred "in admitting the testimony of the State's witness Joseph R. Smith in his opinion as to the value of the part taken and the market value of the remainder of Defendant's property immediately before the condemnation and the market value of the remaining portion of Defendant's property immediately after the condemnation." Appellants' fifth point charges error because of the cumulative effect of the first four points.

Appellants' points, and especially the first four, are too general, vague and indefinite to constitute substantial compliance with briefing rules. However, in obedience to the injunction that we should exercise liberality in construing the briefing rules we have carefully read and considered the statement, argument and authorities under these points in an effort to determine the nature and character of the alleged "improper testimony" claimed by appellants as well as reasons why the expert opinion of the State's witness Joseph

Smith should not have been admitted. When we thus analyze appellants' brief we find that reversal is actually sought because of three contentions:

1. That the State's expert witness Joseph Smith failed to consider the part of the property taken as "severed land" and therefore his testimony concerning such value should not have been admitted.

2. In rendering his opinion concerning the cost evaluation of the buildings and improvements on the site to be taken, the State's expert witness Joseph Smith based such opinion testimony upon the cost estimate of one John March which rendered Smith's testimony hearsay, and therefore inadmissible.

3. The State's expert witness Joseph Smith failed to confirm the principal comparable sales relied upon in arriving at his expert opinion concerning valuations.

Consideration of appellants' contentions requires a summarization of relevant testimony as well as a determination from the record whether proper procedural steps have been taken by appellant to preserve such alleged errors.

The total property owned by appellants consisted of 30,745 square feet of land which was in an irregular shape. The right of way to be taken constituted 5,995 square feet off the end of the property located adjacent to the highway. Located on the property involved was a prefabricated metal-clad building supported by columns or trusses spaced 20 feet apart, such specing creating what was designated as seven "bays" within the building. The building was utilized as a garage and automobile storage area. The State's expert witness, Joseph R. Smith, III, testified that the taking by the State would include a small portion of the north end of the metal building. He testified that the building could still be used for the purpose it had been used even though a portion thereof would have to be severed or cut away from the main building. In giving his estimate of values concerning the property taken he utilized what

he called the cost approach which is based upon the concept that a person is not justified in paying more for property than the cost of buying the land and the cost of constructing on that land a building that is usable. He said that the 5,995 square feet being taken included the head-in parking area that served the entire property and that the metal-clad building was set back about 35 feet from the front property line. In his opinion the building could be severed by including the first three "bays" of the building on the property taken. He said that by doing this the remainder of appellants' property could be restored and head-in parking could be resumed. Smith expressed the opinion that the value of appellants' land on the date of taking was 40 cents a square foot which would put a value on all of the land taken at $12,300. He expressed the opinion that the improvements located on appellants' property had a total value of $32,500 so that, on the date of taking, his opinion of the value of the whole property of appellants, land and improvements, was $44,800. In arriving at his testimony as to the value of the improvements, Smith testified that he used their cost new as of 1966 and that these costs were based upon a cost estimate made by one John March, which estimate the witness checked and found to be in substantial agreement with his own estimate of such cost. In this connection he testified: "I satisfied myself, based on my experience, that the cost estimate of John March was correct." Although the improvements were completed in 1964 Smith did not charge any depreciation. He said that the 5,995 square feet of land being taken was valued at $2,400, or 40 cents a square foot, and that the improvements located on the property taken had a value of $15,200, making a total of $17,600 as an estimate of the value of appellants' property taken. He further testified that the remainder of the property, comprising some 24,750 square feet, would be sufficient to continue in its present use, which is its highest and best use.

Smith valued the remainder of appellants' property before the taking at $27,200 which included the value of the remaining four "bays" of the metal building. He valued the remainder after the taking at $25,300, which indicates a net damage to the remainder of $1,900. This $1,900, in his opinion, would represent the cost of closing the end of the building and that the three "bays" affected by the taking could be rebuilt on the remaining property for a cost that would not exceed the $15,200 value placed upon them.

At the conclusion of the direct and cross examination of the witness Smith appellants' attorney offered to stipulate that the value of $17,600 placed upon the part taken by witness Smith could be accepted as being correct. This stipulation was not accepted by appellee whereupon counsel for appellants moved to strike the testimony of the witness Smith in its entirety because Smith had failed to "consider the part taken as severed land." This motion was overruled. Thereupon Smith was recalled and testified at great length to the effect that if it were considered that the improvements, located entirely within the land taken, did not in themselves enhance the value of the part taken, that his opinion of the value of the part taken would only be $2,400 which is the same amount as his opinion of the value of the land alone that was being taken. Under this premise, witness Smith's opinion of the value of the remainder of appellants' property before the taking was $42,400 and his opinion of the value of the whole property, adding the $2,400 value for the land taken, was $44,800. He also testified that his opinion of the value of the remainder of appellants' property after the taking was still $25,300, the same value to which he had previously testified. Following the premise that the improvements on the land taken contributed no value to the part taken, it was witness Smith's opinion that the damage to the remainder of appellants' property was $17,100.

After Smith's testimony was completed appellants made no effort to renew the motion to strike Smith's testimony.

Appellants' expert witness Van Ballew testified that he used the same cost approach in arriving at the value of the whole property as being $71,639. He placed a value of $1.10 per square foot on the land. Van Ballew testified there was no way to cut the metal building except at one of the support columns located between each "bay" of the building and that it was his opinion that the building should be cut between its fourth and fifth "bays" to provide a building set back on the remainder which would permit head-in parking similar to that which existed on the property prior to the taking. He said that appellants should relocate the four "bays" affected by the taking on the remainder and that such restoration would permit the remainder of appellants' property to continue its present use which was, in his opinion, the highest and best use. He gave as his opinion a value of $33,600 on the seven-bay, metal-clad building without depreciation. He expressed the opinion that the. value of the part taken was $12,474. He said that in his opinion the value of the remainder of appellants' property before the taking was $59,164 and the value of the remainder after the taking was $28,825 which indicated that the damages alone sustained by the remainder amounted to $30,339. He agreed that the small portion of the building situated on the land being acquired for highway purposes contributed no value to the land being taken and that for that part of the building to have any value it would have to be considered as an integral part of the rest of the structure.

In supporting his opinion concerning values the State's witness Smith testified that he took into consideration certain comparable sales of other property including sales made by Wylie L. Thomas and Burt Walden. Smith testified that he confirmed each of the sales relied upon by him, including those of Thomas and Walden. Appellants presented the witnesses Thomas and Walden and each of them testified that they had never heard of the witness Smith nor had they confirmed the sales with the witness Smith. Smith returned to the witness stand and explained that he probably confirmed the sales in question by telephone.

Appellants did not object to the submission of Special Issue No. 1 which was given by the court and which included the element of "severed land." The only assignment contained in appellants' amended motion for new trial concerning Smith's testimony was one general in character and does not distinctly point out or call to the trial court's attention any specific portion of the witness' testimony sought to be assigned as error.

We now consider appellants' three contentions, in the light of the above record.

1. Much has been said in eminent domain cases concerning the use of the phrase "considered as severed land" in dealing with evaluation of property taken. The Commission of Appeals, in State v. Carpenter, 126 Tex. 604, 89 S.W.2d 979 (1936), established the general principles and guidelines concerning the evaluation of property involved in condemnation cases. The court there laid down as the general rule that improvements situated upon the portion of land taken are to be considered as a part of the realty.

"They ordinarily have no market value separate from the land. Therefore, when such improvements are taken or destroyed their value can be reflected in the finding as to the value of the land taken, and evidence of their value is admissible for that purpose. As an alternative, however, if the improvements which are situated upon the portion of land taken are essential to the use and enjoyment of the remainder of the land, or if their replacement, by removal or reconstruction, is necessary in order to obviate depreciation in the value of the residue, the cost of removal, and/or reconstruction and/or replacement may be a proper inquiry in con-

nection with the issue of diminished market value of the remainder."

The court then went on to point out that this rule could not be construed as an attempt to furnish an inflexible guide to be followed in all similar cases but that each case must stand upon its own merits. The court emphasized that, "Fair and just compensation to the owner for the land condemned and for damages to the remainder is the end sought to be attained."

In Coastal Transmission Corporation v. Lennox, 331 S.W.2d 778 (Tex.Civ.App., San Antonio 1960), the court said that while the rule laid down in State v. Carpenter requires a jury to find the market value of the property condemned and the remainder, considered as segregated from each other, the rule does not apply to the introduction of evidence.

The problem concerning the meaning of the phrase "considered as severed land" was again, and very recently, discussed by the Tyler Court of Civil Appeals in City of Tyler v. Brogan, 437 S.W.2d 609 (Tex. Civ.App., Tyler 1969).

■ Applying these rules of law to the record before us it is our opinion that State's witness Smith applied the correct measure of values in giving his estimate to the jury. The peculiar and unusual facts presented and which deal with the taking of a small part of a building susceptible of being divided point up the announced rule by the Supreme Court in State v. Carpenter, supra, to the effect that each case must be viewed in the light of its own facts to the end that a fair and just compensation will be awarded the owner of the property for the part taken. The fact that Smith's testimony falls within the prescribed rules announced by the court in State v. Carpenter, as well as other cases cited, is supported by the fact that, first, appellants were willing to stipulate to the correctness of such estimate, and secondly, appellants' own expert witness, Van Bal-

lew, used the identical method of presenting values to the jury.

Moreover, we doubt seriously that appellants have followed the correct procedural rules to bring to the attention of the trial court, and to this court, the alleged errors complained about. In any event, we have carefully considered the contentions presented and find that no error is reflected therein.

■ 2. Appellants' complaint to the effect that State's witness Smith based his cost estimate of the improvements on the land owned by appellants upon hearsay testimony is likewise without merit and is overruled. A reading of the record will clearly demonstrate that witness Smith, whose qualifications as an expert witness were never challenged or questioned, had his own opinion and estimate concerning such cost estimate relating to the improvements on the property involved. He testified that he used a cost as of 1966 based on the cost estimate by John March but that such estimate was checked by him and his estimate and March's estimate were substantially in agreement. We observe no reversible error reflected by this complaint.

■ 3. Appellants' final contention, that witness Smith did not actually confirm the comparable sales, cannot be sustained. The record reveals that Smith testified he did confirm the sales. Two of the owners of the properties involved testified that they did not know Smith and that he did not confirm the sales with them. The record as thus presented left to the jury the problem of resolving the question of fact. Again, no specific assignment of error complaining of this contention is found in the amended motion for new trial or any appropriate point in this appeal.

We have carefully reviewed the record in the light of the arguments advanced by appellants and find no reversible error reflected therein. Accordingly, the judgment of the trial court is affirmed.