**STATE of Texas et al., Appellants,**

v.

**Joe H. GILL et al., Appellees.**

No. 8234.

Court of Civil Appeals of Texas, Texarkana.

Feb. 25, 1975.

Rehearing Denied Feb. 25, 1975.

Clayton Hutchins, City Atty., Texarkana, for appellants.

Harry Friedman, Harkness, Friedman & Kusin, Texarkana, for appellees.

CHADICK, Chief Justice.

This is an eminent domain case wherein a part of a city lot was condemned and appropriated for use in widening a highway. The City of Texarkana, Texas, on behalf of itself and the State of Texas instituted condemnation proceedings. The strip appropriated, containing an area of 2,322 square feet, was adjacent to the South side of U. S. Highway 82 and was off the north and east side of a 7,280 square foot lot situated at the southwest corner of the intersection of the highway and Cornell Street in the City of Texarkana. The original statement in the proceeding named Joe H. Gill and wife, Lola Gill, together with several governmental subdivisions, as owners of the land in suit.

The parties stipulated to the jurisdiction of the court and regularity of prior proceedings and entered into a jury trial in a District Court of Bowie County; the City and State as plaintiffs and the Gills as defendants. Three special issues were submitted to and answered by the jury.* The

---

* "Special Issue No. 1: From a preponderance of the evidence what do you find was the market value of the land together with the house and other improvements condemned by the state for highway purposes at the time it was condemned? Answer $40,000.00.

Gill defendants moved the court to disregard the jury's response to the second and third special issues. The motion was granted. On the basis of stipulations and the jury's verdict on Special Issue No. 1 the trial judge awarded the City and State the strip described in the pleadings, less certain minerals, and awarded the Gill defendants $40,000.00 as compensation for the appropriated land, less $10,065.00 theretofore deposited in the registry of the court and drawn out by the Gills.

The City and State, appellants here, have briefed seven points of error. The first point raises the issue of insufficiency of evidence to support the jury verdict on Special Issue No. 1. The second point questions the jury's answer to Special Issue No. 1 on the ground that the verdict is contrary to the great weight and preponderance of evidence. Points of error One and Two are sustained.

The south line of the appropriated strip passed through and in effect divided a brick veneer dwelling house located on the lot and occupied by the Gills. The City and State's pleadings sought to condemn and take this building in its entirety, along with the temporary right to enter upon the residue of the Gill lot to remove the building. In the trial court the Gills offered proof of value as though the house was situated entirely upon the appropriated tract.

■ In an action of this nature improvements on appropriated land, such as a building, are a part of the land. McGee Irrigation Ditch Co. v. Hudson, 85 Tex.

587, 22 S.W. 967 (1893). Improvements on appropriated land have no value apart from the land. The value of improvements on land may be proven for the purpose of showing the effect (enhancement or not) of the improvements upon the land's value. State v. Carpenter, 126 Tex. 604, 89 S.W. 2d 194 (1936, opin. adpt); State v. Carpenter, 126 Tex. 604, 89 S.W.2d 979 (1936, opin. apprvd); Lower Nueces River Water Supply District v. Sellers, 323 S.W.2d 324 (Tex.Civ.App. San Antonio 1959, writ ref'd, n. r. e.); 4 Nichols Eminent Domain, Sec. 13.11 [2] Rev. 3rd Ed.).

■ Both Mr. and Mrs. Gill testified as value witnesses and offered the testimony of five others who were permitted, as experts, to express value opinions. Three of the five experts gave opinions as to the value of the appropriated land, exclusive of improvements thereon, and all five expressed an opinion as to the value of the house exclusive of the land. Each of the three land value witnesses and the Gills assigned an independent and separate value to the land and an independent and separate value to the improvements and then gave it as their opinion that the sum of these two elements of value was the market value of the appropriated strip and the improvements thereon.

The section from 4 Nichols, Eminent Domain, previously cited states: "An owner is not entitled to have the buildings valued as separate items in addition to the market value of the land. On the other hand, neither is a condemnor entitled to have the buildings valued apart from the land merely for the purpose of removal. The proper measure of damages is the

"Special Issue No. 2: From a preponderance of the evidence what do you find was the market value of Defendants' entire tract of land, together with the house and other improvements, exclusive of the land and house and other improvements condemned, immediately before the same was taken for highway purposes? Answer $8,500.00.
"Special Issue No. 3: Excluding increase in value, if any, and decrease in value, if any, by reason of benefits or injuries received by Defendants in common with the

community generally and not peculiar to them and connected with their ownership, use and enjoyment of the particular tract of land across which the strip of land has been condemned, and taking into consideration the uses to which the strip condemned is to be subjected, what do you find from a preponderance of the evidence was the market value of the remainder of Defendants' tract of land immediately after the taking of the land and improvements for highway purposes: Answer $10,000.00."

market value of land with the buildings upon it. Thus the owner receives nothing for the buildings unless they increase the market value of the land." Land and improvements merge into a solitary unit for the purpose of valuation. Improvements do not necessarily enhance value; frequently, a strip of land is more valuable with buildings, fixtures, etc., removed than it is with such additions in place. The sum of the separate values placed upon land, buildings, fixtures, etc., may differ substantially from the market value of these elements merged into a single unit for valuation purposes.

Neither the Gills nor their experts testified directly to an opinion that the appropriated strip was made more valuable by the improvements thereon. Opinion testimony of witnesses that *land and improvements* have a certain value furnishes no reasonable or valid basis for an inference that the witnesses are of the opinion that improvements make the land more valuable, it is simply a statement that two separate elements have a combined value of a certain amount. An opinion that *land and improvements* are of a certain value is an assignment of value to both and is out of harmony with the general rule that improvements have no value apart from the land. Referring to the value of improvements, the *Carpenter* case, 126 Tex. 604, 89 S.W.2d at page 980 says that ". . . their value can be reflected in the finding as to the value of the land taken . . .". Such evidence does not tend to prove the value of the merged unit.

No evidence was tendered by the Gills showing the value of the appropriated strip as a merged unit. The City and State offered two value witnesses but their opinions differed. The result is that insufficient evidence supports the jury verdict upon special issue No. 1, which is the foundation of the trial court judgment. It is not necessary to examine other points of error as the trial court judgment must be reversed for the reasons discussed and the case remanded for new trial. It is so ordered. The Gills' Motion for Rehearing is respectfully overruled, the original opinion herein is withdrawn and this substituted for it.

CORNELIUS, Justice (concurring).

I agree that the judgment must be reversed, but not for the reason assigned in the majority opinion.

I believe the majority has taken an unreasonably narrow view of the testimony on value. Mr. Gill, when asked what was ". . . the market value of the land, together with the improvements . . .", stated it was $50,000.00. Mrs. Gill, when questioned about ". . . the value of the *entire piece of property*, together with the house and your improvements . . ." and ". . . the value of your land and house . . .", answered that it was $50,000.00. Mr. Hayes affirmed that the value of the ". . . land taken, together with the house . . ." would be $53,000.00. In my judgment this is equivalent to testimony of the value of the land "as enhanced or influenced by the improvements." To require more is simply an exercise in semantics.

The fact that witnesses considered the values of the land and the improvements separately in arriving at their ultimate conclusion of value does not destroy the probative value of that conclusion, nor does it violate the rules laid down in State v. Carpenter, 126 Tex. 604, 89 S.W.2d 979 (1936, opinion approved). See State v. Adams, 489 S.W.2d 398 (Tex.Civ.App. San Antonio 1972, no writ).

The lesson of *Carpenter* and cases following it is that the *trier of fact* must determine value by considering the land and improvements as a unit and that in jury trials the *manner of submission* must not lead the jury to believe that they may arrive at the value of the unit by simply adding the replacement value of improvements to the separate value of the land. Lower Nueces River Water Supply District v.

Sellers, 323 S.W.2d 324 (Tex.Civ.App. San Antonio 1959, writ ref'd n. r. e.).

In the case at bar special issue No. 1 requested the jury to find the value " . . . of the land, together with the house and other improvements . . .". There was no instruction advising the jury that the land must be valued as a unit or that consideration of the improvements must be limited to the extent that they enhance the value of the land as a unit. The manner of submission was therefore improper because the wording of the issue together with the lack of a proper instruction would lead the jury to believe that they may arrive at the unit value of the land by adding the value of the bare land to the replacement value of the improvements. See County of Nueces, State of Texas v. Salley, 348 S.W.2d 397 (Tex.Civ.App. San Antonio 1961, writ ref'd n. r. e.); State v. Carpenter, supra; Lower Nueces River Water Supply District v. Sellers, supra. I am of the opinion that the judgment must be reversed for that reason.