**Joe H. GILL et al., Petitioners,**

**v.**

**STATE of Texas et al., Respondents.**

**No. B–5206.**

Supreme Court of Texas.

Nov. 5, 1975.

Harkness, Friedman & Kusin, Harry B. Friedman, Texarkana, for petitioners.

R. Clayton Hutchins, City Atty., Texarkana, for respondents.

McGEE, Justice.

This is an eminent domain case. The City of Texarkana, Texas, on behalf of itself and the State of Texas, instituted condemnation ·proceedings for the purpose of widening a highway and has since the beginning intended to take the entire house of the condemnees though only a portion of the structure rested on the land to be taken. The parties involved stipulated both to the regularity of such a method of proceeding, and to the condemnor's right to take the condemned property. The initial statement in the proceeding named Joe H. Gill and wife, Lela Gill, together with several governmental subdivisions, as owners of the land in controversy. The trial court awarded the Gills $40,000 for the land and improvements taken based upon the jury's answer to Special Issue No. 1. The court of civil appeals reversed that judgment and remanded the cause. 519 S.W.2d 514. In view of the facts presented in this case we reverse the judgment of the court of civil appeals and remand the cause to that court for further proceedings.

The realty appropriated contained an area of 2,322 square feet, was adjacent to the south side of U. S. Highway 82 and was off the north and east side of a 7,287 square foot lot situated at the southwest corner of the intersection of the highway and Cornell Street in the City of Texarkana.

The parties entered into a jury trial in the district court of Bowie County with the City and State as plaintiffs and the Gills as defendants. Three special issues were submitted to the jury and subsequently the trial judge granted the Gills' motion to disregard the jury's response to the second and third special issues relating to the value of the remainder.[1] Based upon the jury's answer to Special Issue No. 1 the trial judge

---

1. "Special Issue No. 2: From a preponderance of the evidence what do you find was the market value of Defendants' entire tract of land, together with the house and other improvements, exclusive of the land and house and other improvements condemned, immediately before the same was taken for highway purposes? Answer $8,500.
"Special Issue No. 3: Excluding increase in value, if any, and decrease in value, if any, by reason of benefits or injuries received by Defendants in common with the community generally and not peculiar to them and connected with their ownership, use and enjoyment of the particular tract of land across which the strip of land has been condemned, and taking into consideration the uses to which the strip condemned is to be subjected, what do you find from a preponderance of the evidence was the market value of the remainder of Defendants' tract of land immediately after the taking of the land and improvements for highway purposes? Answer $10,000."
The jury therefore found that the remaining property would realize an increase in value once the house had been removed since its best use was for commercial purposes.

awarded to the City and State the described strip of land, less certain minerals. The State was also given the temporary right to enter upon the property remaining for the sole purpose of removing the entire building. The Gills were allowed $40,000 as compensation for the land taken, together with the value of the entire house, less $10,065 earlier deposited in the registry of the court and previously drawn out by the Gills.

In reversing and remanding, the court of civil appeals was of the view that there was insufficient evidence to support the $40,000 jury award based upon their answer to Special Issue No. 1 since that issue could not have been properly answered due to the nature of the testimony in evidence.[2] That court based its decision mainly upon the failure by the parties to tender evidence of the value of the strip taken, together with the improvements thereon, as a merged unit. The court stated that the testimony of the Gills' witnesses went only to the independent and separate value of the land and similarly, to the independent value of the house as a separate unit. The court held that evidence of such a nature did not tend to prove the value of the merged unit.

The court of civil appeals attached significance to the fact that "[i]n the trial court the Gills offered proof of value as though the house was situated entirely upon the appropriated tract." And, further, the court stated that the Gills tendered no direct evidence, and the State tendered only differing opinions, as to the enhancement effect, if any, the improvements had upon the realty. Because of the lack of such evidence the court reversed and remanded based upon insufficient evidence to support the jury's answer to Special Issue No. 1.

The Gills, as petitioners, contend that the court of civil appeals used an erroneous

formula or test in deciding this case and that such an erroneous conception of the law led to an improper result. They believe that in a case given the present fact situation that there was ample testimony upon which the jury could intelligently ascertain the market value of the land taken as influenced by the improvements thereon. The State agreed with the court of civil appeals that there was insufficient evidence as to the contributory value of the improvements on the land as they affected its market value. It is also their contention that the rulings of *State v. Carpenter,* 126 Tex. 604, 89 S.W.2d 194 (1936), on rehearing 89 S.W.2d 979 (1936), were violated in this case because they believe the jury was allowed to add the values of the land and the house in arriving at its award.

In a condemnation action the general rule is that improvements on appropriated land, such as a building, are a part of the land. *McGee Irrigation Ditch Co. v. Hudson,* 85 Tex. 587, 22 S.W. 967 (1893). The value of such improvements may be proven for the purpose of showing the effect of the improvements upon the land's value. *State v. Carpenter,* 126 Tex. 604, 89 S.W.2d 194 (1936), on rehearing 89 S.W.2d 979 (1936). In the instant case there is testimony from a number of witnesses called by each side as to the value of the strip taken, and the value of the entire house appropriated. The court of civil appeals stated that no witness for the Gills directly testified as to the fair market value of the strip taken as influenced by the improvements thereon. We believe the majority of that court may have taken too narrow a view of the testimony offered regarding value.[3] Because of the method of proceeding adopted by the State, it was necessary that the value of the house be considered as a whole initially, and then its

2. "Special Issue No. 1: From a preponderance of the evidence what do you find was the market value of the land, together with the house and other improvements, condemned by the State for highway purposes at the time it was condemned? Answer $40,000."

3. Judge Cornelius was of the same belief as evidenced by his concurring opinion in this same controversy, *State of Texas v. Joe H. Gill,* 519 S.W.2d 514, 516 (Tex.Civ.App.— Texarkana 1975, writ granted).

value viewed as to its effect on the land taken. This type of valuation scheme was necessitated because the State proceeded to take the entire house although only a portion of it was situated on the strip of land they sought to condemn. Because of this, the witnesses initially considered the values of the land and the improvements separately in arriving at their ultimate conclusion as to market value. This fact alone will not destroy the probative value of their final conclusion as to market value and such testimony clearly does not violate the ruling of *Carpenter*. While *Carpenter* reveals that improvements on the land taken ordinarily have no market value separate from the land it further reflects that evidence as to the value of the improvements is admissible to show their effect on the value of the land itself. *State v. Carpenter,* supra; *State v. Adams,* 489 S.W.2d 398 (Tex.Civ.App.—San Antonio 1972, writ ref'd n.r.e.).

At the trial, Joe Gill as the landowner testified that the house was worth $20,000 and the land $30,000. The question was asked him: "Now what is the market value of the land, together with the improvements—that is the house?" He replied: "Well, I had in mind $50,000 on it." In response to similar questions Mrs. Gill answered that the value of the land and the house at the time it was taken was $50,000. This question was preceded by a question inquiring if she had an opinion as to the value of the entire piece of property together with the house and improvements. Mr. Sam Hayes agreed that in his opinion the actual cash market value of the land taken, together with the house, would be $53,000 on August 14, 1973.

The State then called Mr. Dwayne Lemmon, a Highway Department staff appraiser, who testified that in his opinion the value of the part taken, and the house, was $8,385. John Mugno, a real estate appraiser, also testified for the State that the value of all the improvements with the land taken came to $11,010.[4] In each instance

the witnesses were asked by the State to testify as to what dollar figure they had ascribed to the land value separately, and to the house independent of the land taken.

Though the essential questions could have been more artfully worded, we feel that the above testimony can be construed as equivalent to testimony as to the value of the land taken as affected by the improvements.

The State also complained of the method of the submission of special issues in the present controversy. Though the court of civil appeals never reached this question, in view of our ultimate holding, we should briefly discuss that point. In *Carpenter,* in its opinion on motion for rehearing when speaking to the manner of submission of special issues in such proceedings, the court stated:

> "This opinion must not be construed as attempting to furnish an inflexible rule to be followed in all similar cases. . . Fair and just compensation to the owner for the land condemned and for damages to the remainder is the end sought to be attained. We realize that this result cannot be reached in every case by following the general rules here outlined. If in the exercise of a sound discretion the trial court should find that just compensation, from the standpoint of the condemnor as well as the owner, cannot be arrived at without directing attention to specific items of damages, either by instructions or in special issues, such action need not necessarily be erroneous, so long as a double recovery is avoided and undue emphasis is not placed upon some specific item of damages or injury." *State v. Carpenter,* 126 Tex. 604, 89 S.W.2d 979, 981 (1936).

In the original *Carpenter* opinion the court also said:

> "Without intimating that this method should be followed in all like cases, we

4. The value testimony of the Gills' witnesses was based upon a front foot evaluation, while the opinions of the State's witnesses were based upon a square foot analysis.

believe it will furnish a practical method of submission in most similar cases." *State v. Carpenter,* 126 Tex. 604, 89 S.W.2d 194, 201 (1936).

The court in *Carpenter* never intended to establish inflexible rules regarding submission of issues regardless of the nature of the case.[5] The court expressly realized that the factual pattern presented might vary the application of those guidelines. Such an outlook has been confirmed recently by this court in the case of *C. T. Uselton v. State,* 499 S.W.2d 92 (Tex.1973). In that decision the court realized that the condemnee must have an opportunity to receive just compensation even if the *Carpenter* approach must be slightly varied.

■ Nevertheless, it is settled that the trier of fact must not be led to assume that they may arrive at the value of the unit by merely adding the separate value of the land to the replacement value of the improvements. *State v. Adams,* supra. In these cases the land must be valued as a unit and the consideration of the improvements should be limited to the extent that they enhance the value of the land as a unit.

In the present case such evidence may be present due to the nature of the testimony elicited when viewed in the proper perspective. The opinions expressed as to value in this case do offer at least some evidence regarding the effect of the house upon the overall value of the tract taken. Due to the fact that the parties tried this case as if the house was entirely upon the land taken, it may not be said that evidence was incorrectly offered as to the effect of the value of the entire house solely upon the land taken.[6]

Generally, when a situation involving such a partial improvement taking arises, the law is declared as allowing the jury, or other fact finders, to determine what the actual damages are, or what the value of the actual part taken is. Then, as an element of damage to the remainder of the land, what can be done with the remainder of the house, warehouse or other such improvement, and the expense of getting this done, is to be reflected in the differences of market value but not to be recovered as separate items of recovery. M. Rayburn, *Texas Law of Condemnation,* Sec. 103(3) (1960). See, *State v. Blair,* 72 S.W.2d 927 (Tex.Civ.App.—El Paso 1934, no writ). In the instant case the State elected to take the entire house rather than to bisect it and await the jury's findings as to the damage such a partial improvement taking would create. In the usual case, the amount of damage to the remainder caused by such a partial improvement taking would be revealed in the jury's response to the before and after issues as enunciated in *Carpenter.*

■ In the present case normal procedure was not followed since the entire house was to be appropriated and therefore neither side attempted to introduce any evi-

---

5. We are certainly not stating that the issue submission in this case is entirely proper. Our discussion relates only to the jury decision under these issues and the testimony upon which its decision was based.

6. When questioning the Highway Department staff appraiser the State asked:
  "Q  So the taking, then, what do you—what is your value of the part being acquired by the State?
  "A  $8,385.
  "Q  And does that include land and house?
  "A  Land and house, right.
  "Q  All right, and how much of that for the part taken—how much of that would you ascribe to the land?

  "A  $2,785.
  "Q  All right, and how much did you ascribe to the house?
  "A  $5,600.
  "Q  And this includes—you included that on the taking itself, since we're taking the whole house?
  "A  Yes, sir, that's true."
  Typical of the questions propounded by the Gills to their witnesses is one of those asked Mr. Sam Hayes:
  "Q  But you say the actual cash market value of the land taken, together with the house, would be $53,000 on August 14, 1973?
  "A  Yes."

dence in the usual manner as to apportioning the value of the house between the part taken and the remainder. The State opted to proceed in this unusual fashion and may not now complain that the general rules as to damage calculation could not be strictly applied.

The State maintains that the jury in this case was allowed to arrive at their award by improperly adding together the separate values of the land and the house. The jury award to the Gills of $40,000 is not yielded from a simple combination of land value and replacement value as is obvious upon a review of the testimony. Such a finding is not clearly unjustified given the nature of the testimony elicited under the present facts.

■ In *Puryear v. Porter*, 153 Tex. 82, 264 S.W.2d 689, 690 (1954), this court recognized that while the judgment of a court of civil appeals is final and conclusive on a question of sufficiency of the evidence to support a verdict, nevertheless, when it appeared that its ruling on the question was based upon a conception of the law held by this court to be erroneous, that we would remand the cause to the court of civil appeals for consideration of the weight of the evidence under proper rules of law. Therefore, given our analysis of the present controversy, the judgment of the court of civil appeals is reversed and the cause remanded to that court for further consideration of the question of sufficiency of the evidence to support the jury's answer to Special Issue No. 1.