STATE of Texas et al., Petitioners,

v.

G. A. WALKER, Sr., et al., Respondents.

No. B–1075.

Supreme Court of Texas.

May 21, 1969.

Hart & Hart, James P. Hart, Austin, Gaines Baldwin, Marshall, for petitioners.

Reagan R. Huffman, Jones, Jones & Baldwin, Franklin Jones, Jr., Marshall, for respondents.

SMITH, Justice.

The State of Texas and the City of Marshall, both acting by and through the City, hereinafter referred to as the Plaintiffs, instituted this condemnation proceeding against G. A. Walker, Sr. and wife, Lucy H. Walker, G. A. Walker Oil Company, Inc., a corporation, J. B. Watson, Jr., O. D. Huffman, and Phillips Petroleum Company, a corporation, hereinafter referred to as Defendants, to condemn for highway purposes a strip of land described by metes and bounds as being 0.207 acres, more or less, a part of the Peter Whetstone Survey in Harrison County, Texas. As shown on the plat attached hereto, the 0.207

acres strip of land, taken to widen Highway 59, fronted 180 feet on the highway and 50 feet on East Houston Street. The strip taken was out of and a part of a tract of land consisting of 2.087 acres owned by G. A. Walker. The entire tract was L-shaped and had a frontage of 180 feet on Highway 59 and a frontage of 286 feet on East Houston Street. The Defendants, other than the Walkers, apparently were made parties to the condemnation proceedings for the reason that before and at the time of the taking of the 0.207 acres, a lease was in effect between Walker and J. B. Watson, Jr., covering the part of the land at the intersection of Highway 59 and East Houston Street, used by Watson as a filling station business; the remainder of the frontage on Highway 59 was under lease to Huffman and a building used as a cafe was situated thereon. Walker, as a jobber for Phillips Petroleum Company, used part of the 2.087 acres in connection with the operation of his wholesale bulk sales business. Situated thereon were two warehouses fronting on East Houston Street, which were used by Walker.

Since the improvements were partly situated on the remainder tract of approximately 1.880 acres, the Plaintiffs also condemned:

"title to all of two masonry buildings and two hydraulic vehicle hoists located partially on the remaining property of which the above described property was originally a portion, said improvements being traversed by the third call of the above metes and bounds description. The third call enters the North side of the cafe building seventeen feet East of the Northwest corner of said cafe and leaves said cafe on the South side seventeen feet East of the Southwest corner of said cafe. The third call bisects the hydraulic truck hoist sixteen feet East of the West end of the said hydraulic truck hoist. The third call bisects the hydraulic car hoist 15 feet East of the West end of the said hydraulic car hoist. The third call of the above metes and bounds descrip-

tion enters the North side of the service station building eighteen feet East of the Northwest corner of said service station and leaves said service station on the South side eighteen feet East of the Southwest corner of said service station. The portions of the above described improvements lying East of said third call would be in such condition that they could not be adequately reconstructed at such location; in addition the temporary right to enter upon the property remaining, of which the above described premises were originally a portion, for the sole purpose of removing all of said two masonry buildings and the two hydraulic vehicle hoists."

■ The Special Commissioners awarded the Defendants the sum of $31,493.00 as damages for the taking of the property above described. On December 29, 1966, within the time prescribed by law, the Defendants filed objections to the award of were docketed and trial of the issues had in the County Court of Harrison County, the Commissioners, and the proceedings Texas. Prior to the beginning of the trial, the Defendants admitted that the property in question was subject to condemnation,

had been condemned and taken possession of by the Plaintiffs, and that the only issue in controversy was the value of the property taken and the damage to the remainder. In view of this admission, the burden of proving the market value of the land became the burden of the landowner. The Defendants claimed and were granted the right to open and close the evidence and argument. The charge of the court, to which there was no objection, defined "market value" [1] in the language approved by our decisions.[2] The special issues [3] were in a form in substantial compliance with the issues submitted in the case cited under footnote 2. It should be noted that there appears in Special Issue 3, the additional phrase "or may be subjected".

The jury in answer to these issues found that the market value of 0.207 acres of land condemned by the Plaintiffs for highway purposes at the time it was condemned, considered as severed land, was $47,652.00; the Defendants' tract of land not condemned, immediately before the condemnation, had a market value of $49,350.00 and a market value, immediately after the taking, of $30,500.00. The trial court entered judgment awarding to the Plaintiff,

1. The term "market value" as used in the special issues submitted to you is the price which the property would bring when it is offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy but is under no necessity of buying.

2. State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194 [reh. den. 126 Tex. 618, 89 S.W.2d 979] (1936)

3. SPECIAL ISSUE NO. 1
From a preponderance of the evidence, what do you find was the market value of the 0.207 of an acre strip of land taken by the City of Marshall and State of Texas for highway purposes at the time it was taken, considered as severed land?
Answer in dollars and cents.
Answer: $47,652.00
SPECIAL ISSUE NO. 2
From a preponderance of the evidence, what do you find was the market value of that part of the defendants' tract of

land not taken; that is, the entire tract of land less the 0.207 acre strip, immediately before the 0.207 acre strip was taken for highway purposes?
Answer in dollars and cents.
Answer: $49,350.00
SPECIAL ISSUE NO. 3
Excluding increase in value, if any, and decrease in value, if any, by reason of benefits or injuries received by the defendants in common with the community generally and not peculiar to them and connected with their ownership, use and enjoyment of the particular tract of land across which the strip of land has been condemned, and taking into consideration the uses to which the said strip of land taken is to be subjected or may be subjected, what do you find from a preponderance of the evidence was the market value of that part of defendants' tract of land not taken immediately after the taking of the strip for highway purposes?
Answer in dollars and cents.
Answer: $30,500.00

the State of Texas, the fee simple title to the 0.207 acres condemned, except there was "excluded from said estate condemned all the oil, gas and sulphur which can be removed from beneath said land without any right whatever remaining to the owner of such oil, gas and sulphur of ingress or egress to or from the surface of said land for the purpose of exploring, developing, drilling or mining the same * * *."

The court entered judgment for the Defendants for the sum of $35,009.00 as damages in addition to the sum of $31,493.00, which had been deposited in the registry of the court. The court ordered the City of Marshall to pay the additional sum of $35,-009.00 to the County Clerk and the Clerk, upon receipt of this sum, was ordered to pay the total judgment in the sum of $66,-502.00 to the Defendants. The Plaintiffs' motion for new trial was overruled. On appeal to the Court of Civil Appeals for the Sixth Supreme Judicial District of Texas, at Texarkana, Texas, the judgment of the trial court was affirmed. 430 S.W. 2d 13. The Chief Justice did not participate in the consideration and disposition of the Appeal. We reverse the judgments of the courts below and enter judgment remanding the cause to the trial court for a new trial.

We granted the writ of error on eight of the nine points alleging error committed below: (1) in holding the State and City are liable to pay as damages to the land not taken the cost of converting such land to a different and more profitable use; (2) in holding that in this case, in valuing a partial taking of land where the part taken and the part not taken were devoted to separate uses, the State and the City are liable to pay as damages to the part not taken the cost of demolishing buildings on the part not taken and the market value of these buildings, the buildings not having been taken or damaged in any way by the taking of the strip; (3) in affirming the judgment of the trial court based upon evidence of the market value of the land taken, "not of the value of the land taken considered as a severed tract, but the value of the land when considered as a part of the larger tract from which it was taken."; (4) in affirming the judgment of the trial court for an amount of damages which included an item of $4,500.00, which was duplicated in the testimony of Defendants' expert witness relating to the value of the strip taken and also in his testimony as to the damage to the land not taken, thus requiring the State and City to pay double damages; (5) in failing to hold that the trial court erred in admitting the testimony of the witness, Snyder, as to the value of the property remaining and in refusing to strike such testimony; (6) (7) and (8) in holding that the trial court had properly admitted evidence of profits, in holding that the objection to the admission of evidence as to profits was waived, and in holding that if it was error to permit evidence of income from the bulk wholesale warehouse, such error was not reversible error.

We have concluded to base our reversal of the judgments of the trial court and the Court of Civil Appeals upon the first two points. Since the ruling on these points will require that judgment be entered remanding the cause to the trial court for a new trial, we shall later in this opinion consider the remaining points of error which are not controlling here.

It is the contention of the Plaintiffs under points one and two that it was harmful error for the trial court to fail to sustain their motion in limine and their objections to the introduction of evidence of the market value of the two warehouses situated entirely on the land not taken and the cost of demolishing the two buildings. It was the theory of the Respondents that the testimony of the cost of removal of the buildings situated upon the land not taken was *not* offered as an item of damages for which Respondents were to be compensated, but for the limited purpose of showing the market value of the remainder of the tract after the taking, and as bearing upon what was necessary to put the re-

maining property to "its highest and best use * * *."

Plaintiffs' motion in limine in regard to this and other related testimony, filed prior to the qualification of the jurors on voir dire, requested the court "to instruct the defendants and attorneys to refrain from reference in any manner to the restoration of the premises owned by the Defendants necessary to put the Defendants in the same position that they were in prior to the taking and that no evidence of such restoration be admitted, and particularly that the deposition of Robert Yates taken in this cause be excluded." The court overruled the motion in limine; but when Yates' deposition was offered at the trial, the court sustained an objection to its introduction. Proceeding upon the theory that the State and City can be required to pay an amount as damages to the remaining land which represents the value of the two warehouses plus the cost of demolishing them, the court permitted, over objection, the introduction of the following testimony to be used by the jury in reaching its answers to special issues 2 and 3 relating to the before and after market value of the remaining land after taking the 0.207 acres which was being condemned for the purpose of widening Highway 59. Defendants' witness, D. H. Snyder, III, was permitted to testify that the remaining land was worth $19,850.00 less after the taking than before the taking. Snyder arrived at this figure by adding together his estimates of the value of the two warehouses and the cost of demolishing the buildings; the sum of $10,800.00, being his estimate of the depreciated value of the concrete block warehouse; $8,550.00, being his estimate of the depreciated value of the sheet iron warehouse, and $500.00 being his estimate of the cost of demolishing the two buildings. In connection with the introduction of this evidence, the Defendants were permitted, over objection, to exhibit to the jury as evidence a chart prepared by Snyder, the last column of which is headed:

## "DAMAGE TO REMAINDER"

"In order to recapture the value placed on the remainder of the land, it will have to be put to its highest and best use.

"To accomplish this end, the warehouse and sheet iron building will have to be removed.

| *"Concrete Block Warehouse* | |
|---|---|
| "1500 Sq. Ft. at 9.00 Sq. Ft. | $13,500.00 |
| ------------------------- | 2,700.00 |
| Demolition | 500.00 |
| | |
| *"Sheet Iron Building* | |
| "2850 Sq. Ft. at 5.00 Sq. Ft. | $14,250.00 |
| "Less 40% Depreciation | 5,700.00 |
| "Total | $19,850.00" |

The chart also reflects Snyder's "value of remainder before taking" was $49,350.00 and the "value of remainder after taking $30,500.00". The jury found these exact values in answering issues 2 and 3. Thus, it is seen that the jury apparently accepted this testimony of Snyder and rejected the testimony of Plaintiffs' expert witnesses, one of whom testified that the market value of the remaining property before taking was $56,104.00 and after the taking, $66,-739.00; the other testified that the market

value of the remainder before and after the taking was, respectively, $56,747.00 and $68,012.00.

Defendant, Walker, did not give estimates of the value of the two warehouses and the cost of demolishing them, but he was permitted by the court, over objection, to testify that he planned to tear down the two buildings and to rebuild them on the rear end of his remaining property, and to build a new filling station and a new cafe on the part of the remainder tract which faced Highway 59. The trial court overruled all objections, "giving counsel for Petitioners a running objection, and admitted the above and related evidence."

The Defendants advanced a theory that the testimony as to the warehouse was admissible because it was established in the evidence that before the taking there was a use of the undivided tract, with filling station and warehouses adjoining, which tied the wholesale warehouse operation into the supply of the adjoining filling station; and therefore, the use of the remainder tract was destroyed in that "income of the bulk station located thereon would be reduced by twenty percent of profits and $231.13 gallonage rental." It was argued that the evidence "afforded ample basis for the jury conclusion that the taking caused a reduction in value of the remainder."

██ We cannot agree with the Defendants' theory. In this case we are dealing with the taking of a part of a tract of land. The courts below have held that the Plaintiffs can be required to pay a sum of money, as damages to the remaining land, which represents the market value plus the cost of razing the two warehouses. It has been said that in applying the willing seller-willing buyer test of market value, all factors should be considered which would reasonably be given weight in negotiations between a seller and a buyer. *City of Austin v. Cannizzo*, 153 Tex. 324, 267 S.W.2d 808 (1954). Damages in condemnation proceedings are limited to

damages to property. Property must be either taken or damaged. *Harris County v. Gerhart*, 115 Tex. 449, 283 S.W. 139 (1926). In considering whether or not tendered testimony is admissible it should be remembered that the purpose of the courts is to arrive ultimately at a measure of damages that will "set up a yardstick for value that is broad enough and ultimate enough to include all elements of damages and all elements of values, to the end that just compensation for the land taken or damaged can first be paid to the landowner." See Rayburn, Texas Law of Condemnation, Sec. 92, p. 324. In the case of *State v. Carpenter*, 126 Tex. 604, 89 S.W.2d 194 (1936), this Court announced the guidelines to be followed in determining the true measure of damages to the part of the land taken as well as the measure of damage to the remainder. There it is said:

"We are of the opinion that the proper rule for ascertaining the measure of damage to the remainder of a tract of land where a part only has been taken for public use is directly analagous to the rule which is applicable when there has been a permanent injury to land by reason of the construction of a public improvement, or the construction of an improvement by a private agency exercising the right of eminent domain."

The Court went on to quote from 3 Sedg. on Dam. § 1163, as follows:

" 'The measure of damages must not be confounded with the elements of damage, evidence of which is admitted for the purpose of enabling the jury to apply the rule. * * * The measure of damages in condemnation proceedings, stated in one of its most general forms, is the depreciation in the value of the property; for this is the same as the amount of injury to it.' "

We find nothing in these rules which authorizes the introduction of testimony relative to the market value of the warehouses and the cost of clearing them from the land in order that the Defendants may construct

a new filling station upon the most desirable portion of the remaining land. Ultimately, the Defendants are to be fully compensated for the land taken, together with the improvements situated thereon. It would be contrary to the principles of law herein discussed and heretofore declared by the courts of this State to hold that where, as here, there has been no physical damage whatever to the remaining land or the warehouses by reason of the taking, the condemnee is entitled to use the value of the warehouses and the cost of demolishing them in arriving at the market value of the land not taken. In reaching this conclusion, we are cognizant of the rule announced in State v. Carpenter, *supra*, that "the damages are to be determined by ascertaining the difference between the market value of the remainder of the tract immediately after the appropriation, taking into consideration the nature of the improvement, and the use to which the land taken is to be put." We find no support in any of the authorities for Defendants' contention that the testimony under consideration is admissible. The testimony was harmful in that it placed before the jury a theory that the condemnor was liable for all costs necessary to put the remaining land to its highest and best use as a filling station.

In the case of State v. Zaruba, 418 S.W. 2d 499, 503 (Tex.Sup.1967) this Court was careful to announce the rule to be followed on a retrial in regard to the introduction of testimony as to the cost of reconstructing certain business improvements. We said:

"The testimony regarding the cost of reconstructing the business improvements was introduced on the theory that the taking of the easement rendered these improvements worthless, which caused a depreciation in the value of the property remaining which could be minimized by reconstructing the improvements 25 feet back. State v. Carpenter, * * * held that if improvements which are situated upon the portion of land taken are essential to the use and enjoyment of the remainder of the land, or if their re-

placement, by removal or reconstruction is necessary in order to obviate depreciation in the value of the residue, the cost of removal, reconstruction or replacement may be a proper inquiry in connection with the issue of diminished market value of the remainder. A similar rule obtains where the improvements situated on the residue are rendered obsolete or valueless by the taking."

Obviously, in our case, the improvements situated upon the remaining land after the taking were rendered neither worthless nor obsolete by the taking. They were in the same condition after the taking as before. The questioned evidence in our case was not evidence of compensable damages and had no place in determining the market value of the remainder before and after the taking.

Since our holding on the questions discussed thus far requires that the case must be remanded to the trial court for a new trial, we shall consider briefly the remaining points of error.

■ We turn now to the third point of error assigned in this Court which attacks the holding of the Court of Civil Appeals, affirming the judgment of the trial court, based upon evidence of the market value of the land taken, "not of the value of the land taken considered as a severed tract, but the value of the land when considered as a part of the larger tract from which it was taken." The form of the special issue as to the market value of the land condemned by the State and City for highway purposes at the time it was condemned, considered as severed land, should conform to the form set out in State v. Carpenter, *supra*. The introduction of evidence bearing upon this issue should be kept within the framework of the issue submitted. As said by this Court in City of Austin v. Cannizzo, *supra*, "[i]n the willing seller-willing buyer test of market value it is frequently said that all factors should be considered which would reasonably be given

weight in negotiations between a seller and a buyer. 29 C.J.S. Eminent Domain § 159, p. 1023. This would exclude consideration of purely speculative uses to which the property might be adaptable but wholly unavailable but would permit consideration of all uses to which the property was reasonably adaptable and for which it was, or in reasonable probability would become, available within a reasonable time." In *Cannizzo,* this Court also reaffirmed the holding in *Carpenter* that the issue as to the market value of the land taken is to be decided upon evidence of market value of the land taken, *considered as severed land.* In other words, under the rule announced in these and other decisions of the courts of this state, the market value of the land taken must be based upon a consideration of evidence in regard to the market value of the land taken, considered entirely apart from the increase or decrease in the value of the remaining land.

█ On another trial, if the trial court will follow the guidelines herein announced, the possibility of double damages being awarded will be avoided. The trial court should also rule as inadmissible, if offered, evidence of profits earned by the business which was conducted by Walker on the land not taken, as a basis for determining the market value of the land not taken. See State v. Zaruba, 418 S.W.2d 499, supra; Texas Electric Service Company v. Linebery, 162 Tex. 570, 349 S.W.2d 105 (1961).

The judgments of the courts below are reversed and judgment is here entered remanding the cause to the trial court for a new trial.