The STATE of Texas et al., Appellants,

v.

C. T. USELTON et al., Appellees.

No. 11895.

Court of Civil Appeals of Texas, Austin.

March 29, 1972.

Rehearing Denied April 19, 1972.

Don R. Butler, City Atty., C. Charles Dippel, Asst. City Atty., Austin, for appellants.

Phillips & Norris, Hawthorne Phillips, Austin, for appellees.

SHANNON, Justice.

This is an appeal of a condemnation case relating to a partial taking, and the important question entails the submission of Special Issues pursuant to State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194 (1936), on rehearing 89 S.W.2d 979 (1936).

The case which was tried to a jury in the District Court of Travis County, embraces the taking of 2.748 acres from a 5.9 acre tract in Austin for a highway project. Judgment was entered for the landowners, appellees here,[1] for $371,947.50. Appellants are the State of Texas and the City of Austin.

We will reverse judgment and remand the case to the trial court.

Appellees sued the City of Austin in District Court for damages allegedly resulting from a denial of a building permit for the 5.9 acre parcel. That parcel was generally rectangular in shape, fronting on North Lamar, Anderson Lane, and Stobaugh Street. Appellants filed a cross action suing appellees to condemn the 2.748 acres. After the appellees had waived their other claim, the proceeding became one solely in eminent domain. By withdrawing the amount deposited as security the appellees consented to the taking and damages became the only issue to be determined. The date of the taking was March 16, 1970.

The court submitted the following Special Issues. The answers of the jury are indicated.

"1. What do you find from a preponderance of the evidence was the market value on March 16, 1970, of the defendants' tract of land taken by the plaintiffs, considered as severed land?

Answer in dollars and cents.

Answer: $329,180.50.

2. Do you find from a preponderance of the evidence that the market value of the remainder of the defendants' tract of land not taken was decreased in market value as a result of the condemnation

---

1. C. T. Uselton and wife Marguerita, C. T. Uselton, individually, and C. T. Uselton, Trustee.

by the plaintiffs, giving consideration to the uses to which the part taken is to be subjected?

Answer 'yes' or 'no'

Answer: *Yes.*

If you have answered the foregoing special issue 'no,' you will not answer Special Issues Nos. 3 and 4; otherwise, you will answer both of them.

3. What do you find from a preponderance of the evidence was the value of defendants' approximately 5.9-acre tract of land on March 16, 1970, immediately before the taking of a portion thereof for highway purposes?

Answer in dollars and cents.

Answer: *$577,638.00.*

4. What do you find from a preponderance of the evidence was the market value of the remainder of defendants' land on March 16, 1970, immediately after the other part was taken, giving consideration to the uses to which the part taken is to be subjected.

Answer in dollars and cents.

Answer: *$205,690.50.*"

The principal question is raised by appellants' first four points. Point one is that the court erred in admitting testimony of the market value of the whole 5.9 acre tract prior to any taking. Appellants in point two state that the court erred in overruling their objections to Special Issue No. 3. In point three appellants assail the court's refusal to submit their requested Special Issue No. 3 and, finally, in point four appellants claim that the court erred in entering judgment for appellees upon the jury's verdict as it was incomplete and could not support a judgment.

Apropos Special Issue No. 3, appellants objected to its submission for the reason that (1) it did not submit the proper measure of damages for determining the depreciation in value of the remainder of appel-lees' parcel, because diminution is measured by difference in value of the remainder before and after; (2) it was not an ultimate issue; (3) it inquired of an immaterial evidentiary fact; (4) it was a comment on the weight of the evidence in that appellants had presented no testimony on the value of the whole parcel, and (5) it would allow recovery of more severance damages than the proper measure of damages would allow. In addition appellants requested the submission of their Special Issue No. 3, substantially in the terms of the *Carpenter* issue.

"Special Issue No. 3:

From a preponderance of the evidence, what do you find was the market value of Defendants' tract of land, exclusive of the land condemned, on March 16, 1970, immediately before the land condemned was taken?

Answer in dollars and cents.

Answer: $_____."

Appellants' thesis is that Special Issue No. 3 submitted by the court is contrary to the submission promulgated in State v. Carpenter, *supra*, and its submission under the facts of this case constituted reversible error. In *Carpenter* the State sued to condemn 8.03 acres of land across a 240 acre farm for highway purposes. The trial court instructed the jury to value the part taken as part of the whole tract, and to arrive at damages to the remainder on the basis of the reduced market value of the remainder by reason of the condemnation. Based on the jury's findings, judgment was entered for $803.00 as the value of the land taken, and for $3,477.00 as damages to the remainder. The Commission of Appeals reversed and remanded the case on the theory that in allowing the jury to value the land taken by considering its value as a part of the whole tract, some part of the damages to the remainder would necessarily be included and a further allowance for a depreciation to the remainder would permit double damages. In that connection

the Court said, "In order, therefore, to avoid the possibility of double damages, the value of the part taken should be ascertained by considering such portion alone, and not as a part of the layer tract; unless of course the issue of damages to the remainder of the tract is not involved."

The Court in *Carpenter* suggested a "proper" submission of Special Issues.

"Question No. 1. From a preponderance of the evidence what do you find was the market value of the strip of land condemned by the state for highway purposes at the time it was condemned, considered as severed land?

Answer in dollars and cents.

Question No. 2. From a preponderance of the evidence what do you find was the market value of defendants' tract of land, exclusive of the strip of land condemned, immediately before the strip was taken for highway purposes?

Answer in dollars and cents.

Question No. 3. Excluding increase in value, if any, and decrease in value, if any, by reason of benefits or injuries received by defendants in common with the community generally and not peculiar to them and connected with their ownership, use, and enjoyment of the particular tract of land across which the strip of land has been condemned, and taking into consideration the uses to which the strip condemned is to be subjected, what do you find from a preponderance of the evidence was the market value of the remainder of defend-

ants' tract of land immediately after the taking of the strip condemned for highway purposes?"

In defense of the trial court's submission, appellees make the sensible argument that Special Issue No. 2 of *Carpenter* directs the jury to find the market value of the tract exclusive of the *market value* of the strip condemned immediately before the strip was taken. To do this, appellees reason, the jury must know the value of the whole tract. Accordingly, appellees argue, the trial court followed the intent of *Carpenter*, and, in fact, clarified the *Carpenter* Special Issue No. 2 by requesting the jury to find the value of the whole tract. The Court then, appellants say, performs the ministerial function of subtracting the amount found by the jury to be the value of the tract of land condemned from value of the whole tract as found by the jury.

*Carpenter*, although specifically disavowing an intent to establish a standard submission for use in all partial taking cases, has met the test of time and is now regarded by bench and bar as a lodestar.[2] The *Carpenter* submission has been so consistently followed[3] that one writer has observed ". . . the only instruction or rule to safely follow in all partial takings is the rule in the *Carpenter* case.[4] In City of Austin v. Cannizzo, 153 Tex. 324, 267 S. W.2d 808 (Tex.1954) Justice Calvert stated, ". . . although disclaiming any intention to lay down a hard and fast rule to be followed in all fact situations, this Court made clear in State v. Carpenter, . . . not only what it regarded as the controlling issues in the ordinary eminent

2. Southern Methodist University: Worsham, Problems Peculiar To A Partial Taking in Condemnation, 13 Southwestern L.J. 412 (1959), Baylor University: Diamond, New Tools For the Carpenter Case, 11 Baylor L.Rev. 1 (1959). Kennedy v. City of Dallas, 201 S.W.2d 840 (Tex. Civ.App.1947, writ ref'd n. r. e.). See the dissenting opinion of Justice St. John Garwood in City of Austin v. Cannizzo, supra, wherein he, presumably tongue in cheek, refers to *Carpenter* as a "sort of bible" to the Supreme Court.

3. State v. Walker, 441 S.W.2d 168 (Tex. 1969). On remanding the case to the trial court the Supreme Court said, "The form of the special issue as to the market value of the land condemned by the State and City for highway purposes at the time it was condemned, considered as severed land, should conform to the form set out in State v. Carpenter, *supra*."

4. Baylor University, Speir, Eminent Domain Proceedings—Legal Basis for Appraising, 10 Baylor L.Rev. 1, 9 (1958).

domain case but the form in which the issues should be submitted so as to avoid confusing the jury as much as possible."

While we recognize the logic of appellees' argument, the submission of Special Issues in a partial taking case is not an open question, and it is not for this Court to approve a departure from a submission so well established in the jurisprudence of this State.

As we view *Carpenter* it was the function of the jury to find, as an ultimate issue, the value of the remainder before the taking. Under the trial court's submission the jury was not permitted to find that fact, and that being so, its verdict was rendered incomplete and incapable of supporting the judgment. For this reason we sustain points of error two, three, and four.

Since this case will be remanded, we will decide those matters raised by appellants' points which may recur. Appellants by points five through seven complain that the court erred in permitting appellees' appraisal witnesses to testify as to sales of certain properties which appellants claim not to be comparable. The sales said by appellees to be comparable were those from Northcross Associates, Ltd. to Humble Oil and Refining Company, from Nash Phillips, et al. to Texaco, Inc., and from H. E. Butt Grocery Company to W. M. Day, et al.

According to appellees' witnesses the 5.9 acre tract was situated on a prime corner in north Austin and that its highest and best use was for a shopping center with the front part being suitable for an automobile service center. Only properties having street corner "influence" would be comparable to the 5.9 acre tract. Appellees' witnesses, George L. Reed and C. T. Uselton, testified that the 5.9 acre tract was superior in many respects to those tracts used by them as comparable sales.

The question of the degree of similarity between the property condemned and the property claimed to be a comparable sale is left largely to the discretion of the trial court. McCormick and Ray, Texas Law of Evidence, Vol. I, § 1524, p. 372, 85 A.L.R.2d 110, 126. Without listing appellees' evidence we hold that there was no showing that the court abused its discretion in the admission into evidence of these sales.

Appellants' complaint in their eighth point is that the court erred in the exclusion of evidence showing the amount of appellees' purchase price for the 5.9 acre tract. That tract was purchased piecemeal by C. T. Uselton over a period of years from 1964 to 1967, for a total price of about $158,905. Some parts of the tract were improved and some were not. After the acquisition of the parcels comprising the tract the neighborhood changed rapidly to a desirable commercial one with corresponding rapid increases in value.

Appellants sought to justify the introduction of the total purchase price of the tracts comprising the larger tract on the basis that one of their appraisal witnesses, James Culp, relied in part on this information in forming his opinion as to the value of the 5.9 acre tract. Appellees' riposte was that the sole purpose of appellants' offer was to prejudice the jury.

The price paid by the owner for the purchase of the property to be condemned is not *per se* admissible since it does not necessarily bear on the market value at the time of taking. Among facts to be shown to render such evidence admissible are that the purchase was very recent and that values have not changed in the area since the purchase. Guided by these and other factors, the court in its discretion may admit such evidence. Thompson v. State, 319 S.W.2d 368 (Tex. Civ.App., Waco, 1958, no writ), Broesche v. State, 348 S.W.2d 770 (Tex.Civ.App.1961, no writ).[5] The earliest purchase made by

5. See Nichols on Eminent Domain, 3rd Ed., Vol. 4, § 12.311 [1].

appellees was about five years before the date of taking, while the latest was about two years and three months. We hold that the trial court did not abuse its discretion in refusing to admit appellants' offer.

The judgment is reversed and the case is remanded to the trial court.

Reversed and remanded.