**C. T. USELTON et al., Petitioners,**

v.

**STATE of Texas et al., Respondents.**

**No. B–3387.**

Supreme Court of Texas.

June 27, 1973.

Rehearing Denied Oct. 10, 1973.

---

2. *See* Lockhart, State Treasurer et al. v. A. W. Snyder & Co. et al., 139 Tex. 411, 163 S.W. 2d 385 (Tex.1942).

Phillips & Norris, Hawthorne Phillips and Robert W. Norris, Austin, for petitioners.

Don R. Butler, City Atty., Austin, for respondents.

DANIEL, Justice.

This appeal concerns a condemnation award in favor of the condemnees, C. T. Uselton, et al, in a partial taking of 2.748

acres from a 5.9 acre tract by the City of Austin on behalf of itself and the State of Texas as condemnors. The principal question before us is whether the trial court erred in submitting special issues which varied in form and wording from those suggested in State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194 (1936), on rehearing 89 S.W.2d 979 (1936). Holding that the trial court did so err, the Court of Civil Appeals reversed and remanded. 478 S.W.2d 851. We disagree and affirm the judgment of the trial court.

The condemnees, hereinafter referred to collectively as Uselton, owned a rectangular tract of approximately 5.9 acres at an important "five-point" intersection in North Austin. It was bounded on three sides by Lamar Boulevard, Anderson Lane and Stobaugh Street. There was probative evidence that before the taking it had a market value as a unit in excess of the combined value of the remaining 3.148 acres and the condemned 2.748 acres, if either of the separate tracts were required to be valued before the taking as if never a part of the single unit. This, it was argued, was due to the unusual configurations resulting from the triangular manner in which the 5.9 acre tract was bisected by the condemnation, and the insistence of the condemnors, hereinafter referred to collectively as the City, on a literal application of *Carpenter* as requiring the part taken to be valued before the taking as though it were already "severed land." The following sketch shows the configuration and severance problem.

ANDERSON LANE

2.748 ACRES CONDEMNED

3.148 ACRES REMAINDER

N

LAMAR BOULEVARD

STOBAUGH STREET

[A7552]

If the 2.748 acres were to be so valued and considered as already severed land, Uselton contended that he could be awarded just compensation only if the before taking market value of the whole tract was considered as the basic figure from which to determine any loss resulting from the part taken and any diminishment in the value of the remainder. The trial court agreed. It limited all consideration and evidence of the value of the tract taken as though it were severed land and submitted the standard Carpenter Special Issue No. 1, asking the market value of such tract on the date of taking, "considered as severed land." However, conditioned on a finding that the remainder was decreased in market value as a result of the condemnation (considering the uses to be made of the part taken), the trial court then inquired by Special Issue No. 3 of the market value of the Uselton 5.9 acre tract before the taking of the portion for highway purposes; followed by the customary *Carpenter* issue as to the market value of the remainder after the taking. The issues as submitted and the jury's answers are copied in the margin.[1]

From the total before taking value of $577,638 for the entire 5.9 acres (Issue 3) the trial court deducted the $329,180.50 found as the before taking value of the part taken (Issue 1) to arrive at its mathematical calculation of $248,457.50 as the total value of the tract exclusive of the part taken. From this total value, the Court deducted the jury's finding of $205,690.50 (Issue 4) as the value of the remainder after the taking, which resulted in a diminishment of $42,767.00. Following customary *Carpenter* type mathematical calculations, the trial court added the value of the part taken ($329,180.50) to the amount of the diminishment ($42,767) for a total award of $371,947.50.

The City's principal complaint in the Court of Civil Appeals was that the trial court erred in allowing testimony of the market value of the whole 5.9 acre tract prior to any taking; in submitting Special Issue No. 3 inquiring of the market value of the whole 5.9 acre tract prior to any taking; in refusing the City's requested Special Issue No. 3 inquiring of the market value of the Uselton land, exclusive of the land condemned, immediately before the condemned land was taken;[2] and in entering judgment for Uselton upon the jury's verdict because it was incomplete and could not support a judgment. The City's thesis was that Special Issue No. 3, submitted by the trial court as a means of deter-

1. 1. What do you find from a preponderance of the evidence was the market value on March 16, 1970, of the defendants' tract of land taken by the plaintiffs, considered as severed land?
Answer in dollars and cents.
Answer: $329,180.50.
2. Do you find from a preponderance of the evidence that the market value of the remainder of the defendants' tract of land not taken was decreased in market value as a result of the condemnation by the plaintiffs, giving consideration to the uses to which the part taken is to be subjected?
Answer "yes" or "no."
Answer: Yes.
If you have answered the foregoing special issue "no," you will not answer Special Issues Nos. 3 and 4; otherwise, you will answer both of them.
3. What do you find from a preponderance of the evidence was the [market] value of defendants' approximately 5.9-acre tract of land on March 16, 1970, immediately before the taking of a portion thereof for highway purposes?
Answer in dollars and cents.
Answer: $577,638.00.
4. What do you find from a preponderance of the evidence was the market value of the remainder of defendants' land on March 16, 1970, immediately after the other part was taken, giving consideration to the uses to which the part taken is to be subjected?
Answer in dollars and cents.
Answer: $205,690.50.

2. The City's requested Issue No. 3 read:
"From a preponderance of the evidence, what do you find was the market value of Defendants' tract of land, exclusive of the land condemned, on March 16, 1970, immediately before the land condemned was taken?
Answer in dollars and cents.
Answer: $————."

mining the before taking value of the entire tract (exclusive of the part taken) was contrary to the submission suggested for such cases in *Carpenter* and that such submission under the facts of this case constituted reversible error. The Court of Civil Appeals, while stating that "we recognize the logic of appellees' argument" to the contrary, and without making a finding of harm, reversed and remanded, stating that "the submission of Special Issues in a partial taking case is not an open question, and it is not for this Court to approve a departure from a submission so well established in the jurisprudence of this State." 478 S.W.2d at 855.

At the outset, we can appreciate the hesitancy of the Court of Civil Appeals to approve a variation of the *Carpenter* issues. It is true that, with very few exceptions, in partial taking cases the courts of this State have followed the form and wording of issues suggested in *Carpenter* as consistently as if *Carpenter* had said no variation under any circumstances is permissible, even if necessary for a condemnee to have an opportunity to receive just compensation.[3] The Court said no such thing in *Carpenter*. On the contrary, concerned primarily with the prevention of double damages in the partial taking of an 8.03 acre strip for a highway across a 240 acre farm, the Court said:

"As this case is to some extent a representative one, . . . we are *suggesting* what occurs to us is a proper method of submitting same; on the assumption, of course, that it will be submitted on special issues. *Without intimating that this method should be followed in all like cases,* we believe it will furnish a practical method of submission in most similar cases." (89 S.W.2d at 201). Emphasis added.

On rehearing, 89 S.W.2d 979 at 981, the Court was even more emphatic in its

recognition that variations may be necessary in similar cases which involve other facts and circumstances:

"*This opinion must not be construed as attempting to furnish an inflexible rule to be followed in all similar cases. . . .* Fair and just compensation to the owner for the land condemned and for damages to the remainder is the end sought to be attained. *We realize that this result cannot be reached in every case by following the general rules here outlined.*" Emphasis added.

Above all considerations of form and wording, the *Carpenter* case recognizes, as we must do, that Article I, Section 17 of the Texas Constitution, Vernon's Ann.St. provides:

"No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person . . . ."

In the instant case, Uselton had a particularly well situated 5.9 acres of land within the City of Austin useable as a unit. Before this condemnation proceeding, it had a market value as a unit, and he was entitled to adequate compensation for any and all of such value which was lost to him by reason of this proceeding. It follows that both he and the City were entitled to the submission of issues from which the court could figure the amount of just compensation due without allowing double recovery for any portion of the tract.

Rayburn, in Texas Law of Condemnation, Sec. 167(1), at page 493, says that the *Carpenter* issues are adaptable to "the usual, ordinary, run of the mill cases of a 'taking' of a portion of land, improved or unimproved, and leaving a remainder which is claimed to be damaged. The approved issues which in the usual,

3. See dissenting opinion of Justice Garwood in City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808, 816 (1954); Kennedy v. City of Dallas, 201 S.W.2d 840 (Tex.Civ.App.1947, writ ref. n. r. e.).; 13 Southwestern L.J. 412 (1959); 11 Baylor L.R. 1 (1959); 10 Baylor L. R. 1 (1958).

uncomplicated case, can be adapted for any applicable need" are set forth, but the author then cites more complicated cases where variations have been used to provide just compensation. *Supra,* Secs. 168(1) and 168(2). We do not consider this an ordinary or uncomplicated case. It is complicated first by the nature of the 5.9 acre tract before the taking. Its small size, original rectangular shape, location at a five point intersection on the corner of Lamar Boulevard and Anderson Lane, made it adaptable for use as a unit for a commercial shopping center. This use of the entire tract as a unit was destroyed by the taking. Secondly, it is complicated by the triangular configuration of the 2.748 acres condemned, and the City's insistence that literal and inflexible application of *Carpenter* requires that this odd-shaped tract must be considered and valued alone before the taking; the same as if it had already been severed from the remainder of the tract; as though it had never enjoyed any support by or use with the remainder; and without allowing for any possible depreciation to it because of the configuration of the severance. It is highly questionable if the Court's suggested wording of Issue No. 1 in *Carpenter* intended any such strained application of the term "considered as severed land." [4] However, this point is not directly before us, since the City finally persuaded the trial court, while a Uselton appraiser was on the stand, to instruct the jury that "in considering the market value of that tract which was actually taken, you

shall consider that portion standing alone and not as a part of the larger tract."

After that instruction, the appraiser re-evaluated the part taken and reduced his former appraisal of the 2.748 acres by approximately $21,000. Under directions that the part taken must be appraised before taking as though it had already been severed into the triangular shape, he said that the reduction in price was necessitated because the pointed narrow triangle fronting on Anderson Lane, when severed from the remainder of the Uselton property, could be used only as a driveway or landscaped area. Obviously, this was a depreciation in value of the condemned portion before the taking which was brought about solely by reason of the odd shape of the severance. This was a type of loss from the value of the whole which, in view of the trial court's instruction and submission of the exact *Carpenter* Issue No. 1 at the City's insistence, could be considered or recovered in this case only under the procedure followed by the trial court in deducting the market value of the severed tract from the value of the whole 5.9 acres in order to determine its before taking value, exclusive of the severed tract.

The trial court concluded that the intent of the *Carpenter* suggested Issue No. 2 concerning the value of the tract before the taking (exclusive of the strip of land condemned) could reasonably mean the market value of the whole parent tract, less the market value found by the jury for the strip condemned.[5] We think it not

---

4. At 89 S.W.2d 201 the wording of this inquiry was suggested as follows: "Question No. 1. From a preponderance of the evidence what do you find was the market value of the strip of land condemned by the state for highway purposes at the time it was condemned, considered as severed land?"

For discussions of the intent and meaning of the latter phrase and evidence admissible thereunder see Rayburn, Texas Law of Condemnation, Sec. 135, and T. M. Diamond, New Tools for the Carpenter case, 11 Baylor Law Review 1 (1959). See also the Court's citations to texts in *Carpenter*, 89 S.W.2d at 196,

which mention "value of the part condemned, as severed land, plus depreciation by reason of the severance," and our suggested modification of the first *Carpenter* issue under circumstances presented in Alexander v. City of San Antonio, 468 S.W.2d 797 (Tex.1971).

5. Carpenter Issue No. 2: "Question No. 2. From a preponderance of the evidence what do you find was the market value of defendants' tract of land, exclusive of the strip of land condemned, immediately before the strip was taken for highway purposes?" 89 S.W.2d at 201.

only a reasonable interpretation and clarification necessitated under the facts of this case, but one which is fully supported by the following statement of the Court in *Carpenter* on rehearing, 89 S.W.2d 979 at 981:

"If it be true, as argued by counsel in this case, that the 8.03 acres of land taken was, when considered as a part of the farm, worth $100 per acre, it necessarily follows that the value of the farm as a whole included the sum of $803 by reason of this 8.03 acres being included therein. If, after the land was severed from the tract, the 8.03 acres was worth, as severed land, only $100, it must follow, it seems to us, that, when proof was made of this fact, a jury would necessarily conclude that the value of the balance of the farm had been diminished $703 by reason of the severance of the strip alone."

■ The above statement suggests the propriety of the trial court inquiring as to the value of the whole tract under the fact situation presented in the instant case. It could have elicited the same jury finding with less variation from the original *Carpenter* Issue 2, by inquiring: "From a preponderance of the evidence what do you find was the market value of defendants' tract of land, exclusive of *the market value you have found for* the strip of land condemned, immediately before the strip was taken for highway purposes?" (Here the only new words added to the original *Carpenter* Issue No. 2 are italicized). In this manner the jury would do the mathematical calculation instead of the court. In the instant case the trial court inquired in Issue No. 3 of the value of defendant's 5.9 acre tract of land immediately before the taking of a portion thereof for highway purposes, and then performed the mathematical calculation in excluding therefrom the value placed by the jury on the tract taken in answer to Issue No. 1. The ultimate and controlling fact issue is the same. It matters not whether the judge or the jury performs the mathematical calculations. We approve such alternative methods of submitting this issue in similar cases involving partial takings.

Inflexible adherence to the precise form and words of each issue as suggested in *Carpenter,* even when variation or clarification is necessary to arrive at fair and just compensation, would ignore other important admonitions and basic principles contained in the *Carpenter* opinion. In our opinion, the basic principles of the *Carpenter* case, especially in the determination of just compensation without any double recovery, were followed by the trial court in the submission of this case. Neither the City nor the Court of Civil Appeals assert that the manner of submission resulted in any double recovery, and the Court of Civil Appeals failed to find that any harm resulted to the City by reason thereof.

■ On the other hand, the City vigorously argues that it was harmed, because it relied on previous court decisions which indicated that evidence and issues on the market value of the entire tract were wholly immaterial in any condemnation suit, and it therefore failed to produce any evidence of such value. This, it argues, left Uselton with the only evidence on Special Issue No. 3, and "left Condemnors discredited and naked before the jury." Further, the City says that if the trial court's "change in the law" is affirmed, the case should at least be remanded so that additional evidence may be offered. As heretofore indicated, we do not agree that the trial court made any change in the law. Neither do we agree that the jury was without probative evidence from the City which it could consider in passing upon the value of the entire tract. The City offered detailed testimony of its two appraiser witnesses as to the before taking value of both the tract taken and the remainder. It was no problem for the jury to add these two figures and thereby obtain a total of what the City appraisers considered to be the approximate market value of the whole. One of the City appraisers testified on cross examination that in this case

the before taking value of the part taken and the remainder "added together would be the value of the whole." The average of their appraisals for both portions totaled $292,250.

Furthermore, Uselton opened and placed his evidence before the jury first. The City's counsel knew by the ruling of the trial court on the second day of the trial, which lasted for more than a week, that the trial court was emphatic in his belief and ruling that evidence of the value of the entire 5.9 acres was admissible and essential in order to apply the *Carpenter* basic principles to the circumstances of this case. The City had ample opportunity to ask its appraisers for their opinion as to a separate market value on the whole, if the City had thought the figure would be less than their total of the before taking value of both the part taken and the remainder. It did not see fit to do so.

A comparison of the jury's finding as to the before taking value of the whole in answer to Special Issue No. 3 ($577,638) with the average of Uselton's three appraisal witnesses as to the before taking value of the whole ($792,841) and the average of the City's two appraisers as to the combined before taking value of the part taken and the remainder ($292,250), indicates that the jury must have given some consideration to the City's evidence bearing on this issue. In fact, the jury came within about $35,000 of splitting the difference between the average value of Uselton's appraisers and the average values of the City appraisers. The City's argument that it might fare better on a new trial is not persuasive. After considering the 1038 pages of testimony and the multitude of exhibits bearing on market values, together with the jury's answers based upon this record, we conclude that it is as logical to speculate that a new trial would result in a higher award against the City as it is to guess that it might be lower.

■ In any event, on the record before it, the trial court rendered a correct judg-

ment. It is well settled that an errorless judgment of a trial court cannot be reversed in the interest of justice or to permit the losing party to have another trial. Rule 505, Texas Rules of Civil Procedure; City of Houston v. Blackbird, 394 S.W.2d 159, 165 (Tex.1965); Davis v. Davis, 141 Tex. 613, 175 S.W.2d 226, 230 (1943); Calvert, In the Interest of Justice, 4 St. Mary's Law Journal, 291, 301 (1972).

Accordingly, the judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

SAM D. JOHNSON, J., not sitting.