**The STATE of Texas, Appellant,**

v.

**H. S. CHERRY, Appellee.**

**No. 18390.**

Court of Civil Appeals of Texas, Dallas.

Dec. 19, 1974.

Rehearing Denied Jan. 9, 1975.

---

John L. Hill, Atty. Gen., David R. Thomas, Asst. Atty. Gen., Dallas, for appellant.

Bill Jones, McKool, Jones, Shoemaker & Vassallo, Dallas, for appellee.

GUITTARD, Justice.

In this proceeding the State of Texas has taken an 11.25-acre strip of land out of a tract of 81 acres owned by H. S. Cherry. Most of the 81-acre tract lies in a floodplain, but some of it is high ground fronting on a major thoroughfare. All of the strip taken is subject to flooding. Judgment was rendered on a verdict in an amount favorable to the landowner, and the State appeals.

We reverse the judgment on the ground that the trial court erred in overruling the State's motion to strike the testimony of the landowner's appraiser, who attributed to the strip taken an average value based on the value of the whole tract. In view of another trial, we hold also that the court did not err in determining the value of the remaining land before the taking by submitting to the jury the value of the whole tract and subtracting from that value, as found, the value of the part taken, instead of submitting the usual issue of the value of the remaining land before the taking. In other words, we hold that the court properly submitted issues modeled on those approved in Uselton v. State, 499 S.W.2d 92 (Tex.1973) instead of the issues suggested in State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, rehearing denied, 126 Tex. 618, 89 S.W.2d 979 (1936).

### The Valuation of the Landowner's Appraiser

■ The present case is similar to City of Richardson v. Smith, 494 S.W.2d 933 (Tex.Civ.App.—Dallas 1973, writ ref'd n. r. e.). In that case we held that where the part taken is subject to limitations of use not applicable to the whole tract, an opinion of the value of the part taken based on an average-per-acre value of the whole may be admitted only if there is evidence that the part taken contributed to the whole the same value per acre as the remaining land. *Id.* at 939. Under that holding we find that the testimony of the landowner's appraiser here is inadmissible.

The following statement of evidence is taken entirely from the testimony of the landowner's appraiser. The 81-acre tract in question is located between Lamar Street and the Trinity River in an industrial area of Dallas. It has 1450 feet of frontage along Lamar Street. A railroad right-of-way crosses the property from north to south, dividing it into a tract of 37.75 acres on the east and 43.25 acres on the west. A high embankment on this right-of-way protects the easterly tract from flooding from the river, but some of the land east of the railroad is subject to flooding by water that accumulates between

Lamar Street and the embankment. The land is high along Lamar Street and for several hundred feet back, and all the land further west is in a designated floodplain for zoning purposes, but it has been filled as far west as the railroad. Beyond the railroad the property has not been filled and slopes gradually down to the river. On cross-examination, the appraiser admitted that he did not know how much of the property east of the railroad had been filled at the time of the taking, but his opinion of the value of the whole tract appears to be based on the assumption that substantially all of the land east of the railroad was high ground or had been filled. He was confident that notwithstanding the floodplain designation of all but a narrow strip along Lamar Street, the landowner would have no difficulty obtaining a building permit for industrial buildings on the tract east of the railroad.

The appraiser conceded that all of the land west of the railroad was subject to flooding by the river, and that the low land was not as valuable as the high land because of the expense of filling. He recognized that the only access to this part of the land was along an unimproved street running from Lamar Street along the north side of the property and ending just beyond the railroad embankment. In his opinion, the highest and best use of the entire 81 acres was for a single-user industry, although he said it might be suitable for two users if a street could be extended along the south line from Lamar Street across the railroad. The part east of the railroad could be used for offices, warehouse, or factory, and the back part could be used for employee parking and open storage of heavy items that would not float away.

The 11.25-acre strip of land in question was taken by the State for an elevated bridge structure for Interstate Highway 45, designed to run diagonally from north to south across the 81 acres and over the railroad. Only one acre of the part taken lies east of the railroad. The remaining 10.25 acres lie on the west side, including a 3.5-acre triangle not actually taken, but so isolated that the parties stipulated it should be included in the taking for valuation purposes.

When asked for his opinion on the value of the property, the appraiser said that the entire tract was worth $12,500 per acre, or approximately $1,000,000. He estimated the value of the part taken by multiplying that per-acre value by 11.25 and then rounding it off to $140,000. He admitted that $12,500 was an average value of land both filled and unfilled, and said that he would give a different value if appraising only the property along Lamar Street. He did not in any manner indicate an opinion that the strip taken contributed the same value per acre as the remaining land.

In support of the trial court's denial of the State's motion to strike, the landowner argues that *City of Richardson* is distinguishable because there the city was taking all of the floodland and part of the high ground, whereas here the State is taking only a small part of the floodlands and none of the high ground. These differences are not significant, since the average value here, as in *City of Richardson*, is obviously affected by the higher value of the remaining land. The impropriety of using an average is especially clear with respect to the 10.25 acres taken west of the railroad. According to the appraiser's own testimony, this 10.25-acre-strip, like all the land west of the railroad, was subject to flooding by the river, and, consequently, its use was limited to employee parking and open storage of heavy materials. Yet the value he assigned to it was an average of the value of the entire 81 acres, determined in part by the suitability of the land east of the railroad and along Lamar Street for highly developed industrial use. Application of this proportionate-value method when the part taken is worth less per acre than the remaining land would give the landowner more than the fair value of the land taken. Comment, Compensation for Partial Takings in Texas, 6 St. Mary's L.J. 206, 220 (1974).

## The Special Issues

█ Since the foregoing holding requires that the case be tried again, we need not consider all the points· presented for reversal. For guidance of the trial court, however, we shall discuss the State's contention that the court erred in refusing to submit the familiar issues suggested in State v. Carpenter, 126 Tex. 604, 89 S.W. 2d 194, rehearing denied, 126 Tex. 618, 89 S.W.2d 979 (1936), and in submitting instead issues modeled on those approved by the Supreme Court in Uselton v. State, 499 S.W.2d 92 (Tex.1973). Although we agree that the Uselton issues are probably more favorable to the landowner, we hold that the State is not entitled to complain of any harm in this respect.

Theoretically, under either method of submission, the jury's findings should produce the same total compensation. Thus, in this case, the jury's findings and the trial court's computations in rendering judgment under the Uselton formula may be stated as follows:

| | | |
|---|---|---|
| Entire 81 acres before taking (Issue No. 1) | $ | 810,000 |
| 11.25 acres taken (Issue No. 2) | (minus) | 65,000 |
| Computed value of remainder before taking | | 745,000 |
| Remainder after taking (Issue No. 3) | (minus) | 710,000 |
| Damage to remainder | | 35,000 |
| 11.25 acres taken (Issue No. 2) | (plus) | 65,000 |
| TOTAL COMPENSATION | $ | 100,000 [1] |

Under the Carpenter submission, the same. result should follow because the value of the part taken and the value of the remainder before the taking should add up to the value of the whole tract. On this assumption, the findings of value and the judgment to be rendered on the Carpenter issues would be as follows:

| | | |
|---|---|---|
| 11.25 acres taken (Issue No. 1) | $ | 65,000 |
| Remainder before taking (Issue No. 2) | | 745,000 |
| Remainder after taking (Issue No. 3) | (minus) | 710,000 |
| Damage to remainder | | 35,000 |
| Part taken (Issue No. 1) | (plus) | 65,000 |
| TOTAL COMPENSATION | $ | 100,000 |

Notwithstanding this theoretical equivalence, practical considerations indicate that the Uselton issues are more favorable to the landowner. Comment, Compensation for Partial Takings in Texas, 6 St. Mary's L.J. 206, 227, 228 (1974). In real estate transactions the normal rules of mathematics do not always apply because the whole is sometimes greater than the sum of its parts. The whole tract may be adaptable to uses to which smaller tracts would not be suitable, and, therefore, the property may command a higher price on the market if offered for sale in its entirety than if offered in separate tracts. When valued separately, each of the parts may sustain "severance damage" by reason of loss of the additional value each has as a part of the whole. Yolo Water & Power Co. v. Hudson, 182 Cal. 48, 186 P. 772 (1920); 4 A. Nichols on Eminent Domain § 14.231 (3d ed. 1971); 1 L. Orgel on Valuation Under Eminent Domain § 52 (2d ed. 1953). Consequently, if the jury is instructed to find the value of the remaining land before the taking, as suggested in Carpenter, we cannot be certain that this amount, added to the value found for the part taken, would necessarily equal the value of the entire tract. On the contrary, the Carpenter submission could well result in lower aggregate compensation if the jury gives a literal interpretation to

---

1. A simpler version of this computation is as follows:

| Whole tract before taking (Issue No. 1) | | $810,000 |
|---|---|---|
| Remainder after taking (Issue No. 3) | (minus) | 710,000 |
| TOTAL COMPENSATION | | $100,000 |

In this computation the value of the part taken, $65,000 (Issue No. 2), is used in the

formula only as a minimum. Thus, in effect, the Uselton submission adopts the "before and after" formula, modified by use of the value of the part taken as a minimum to insure full compensation to the landowner for the part taken, regardless of any benefits to the remainder. See Diamond, New Tools for the Carpenter Case, 11 Baylor L.Rev. 1, 7, 8 (1959).

the *Carpenter* instruction to consider the part taken "as severed land." Diamond, New Tools for the Carpenter Case, 11 Baylor L.Rev. 1, 5 (1959). Under such a literal interpretation, the jury could logically find that the part taken would have little value "as severed land" because of its shape and isolation, and thus omit any finding of the additional value of the part taken as a part of the whole, and yet find in answer to the second *Carpenter* issue that the value of the remainder before the taking was only its relative value as a part of the whole. Under these findings, no compensation would be allowed for the additional value of the part taken when considered as a part of the whole.

Under *Uselton*, however, no such omission would occur. If the jury takes the "severed land" instruction literally and finds a value for the part taken without considering its additional value as part of the whole, that omission would be offset by the greater computed value of the remainder before the taking, since this computed value is determined by subtracting the value of the part taken from the value of the whole.

The difference between the two methods of submission may be demonstrated by using as an example the hypothetical case of a homogeneous tract of land worth $10,000, as suggested in 1 L. Orgel on Valuation Under Eminent Domain § 52 (2d ed. 1953). The example assumes that the tract as a whole is worth $10,000, but that if it is divided into two equal parts, neither half would sell separately for more than $3,000. If one of these halves is taken, the result under the *Uselton* formula would be as follows:

| | | |
|---|---|---|
| Whole before taking (Issue No. 1) | $ | 10,000 |
| Part taken, as severed land (Issue No. 2) | (minus) | 3,000 |
| Computed value of remainder before taking | | 7,000 |
| Remainder after taking (Issue No. 3) | (minus) | 3,000 |
| Damage to remainder | | 4,000 |
| Part taken (Issue No. 2) | (plus) | 3,000 |
| TOTAL COMPENSATION | $ | 7,000 |

On the same evidence, in answer to the Carpenter issues, the jury might well reach the following conclusions:

| | | |
|---|---|---|
| Part taken, as severed land (Issue No. 1) | $ | 3,000 |
| Remainder before taking (Issue No. 2) | | 5,000 |
| Remainder after taking (Issue No. 3) | (minus) | 3,000 |
| Damage to remainder | | 2,000 |
| Part taken (Issue No. 2) | (plus) | 3,000 |
| TOTAL COMPENSATION | $ | 5,000 |

This amount of compensation would be inadequate because it would not include the $2,000 severance damage to the part taken. To compensate the landowner for this severance damage, the jury would either have to include in its valuation of the part taken (Issue No. 1) the additional value of the part taken as a part of the whole, contrary to the court's instruction to consider the part taken "as severed land," or the jury would have to include this additional value in its valuation of the remainder before the taking (Issue No. 2), and thus find that the remainder before the taking was worth $7,000, though it was only one-half of a homogeneous whole worth $10,000. Either alternative would present difficulty to a literal-minded juror.

In the present case, although the 81-acre tract is not homogeneous as in the hypothetical example, the same problem arises. The 11.25 acres taken, "considered as severed land," might logically be found to have only a nominal value because of its shape and isolation, perhaps even less than the average for the 43.25 acres lying between the railroad and the river. Yet, unless the jury is instructed to find the value of the entire 81 acres, it could logically find a value for the remaining land before the taking which would not include the severance damage to the part taken.

We recognize that juries frequently ignore the "severed land" instruction and find a proportionate value for the part taken. *See* City of Tyler v. Brogan, 437 S.W.2d 609, 612 (Tex.Civ.App.—Tyler

1969, no writ). Judge Rayburn justifies this tendency by explaining that the real meaning of this instruction is that it "envisions a hypothetical market value for the part taken as a part of the whole," but requires the jury to think of the part taken "as having already been set apart, severed, separated and its proportionate value fixed, set aside and not to be taken into account in any other, or further deliberations, or calculations." M. Rayburn, Texas Law of Condemnation § 135, at 416 (1960). Likewise, the Supreme Court, in State v. Walker, 441 S.W.2d 168 (Tex. 1969) explains that the "severed land" instruction really means "considered entirely apart from the increase or decrease in the value of the remaining land." Even an experienced condemnation lawyer may have difficulty with these mental gymnastics. Expecting juries to perform them seems to assume a degree of mental agility which jurors are not usually supposed to possess. Counsel for the landowner should not have the burden to persuade the jury to adopt an interpretation which seems to vary from the literal meaning of the language used in the charge.

We are not persuaded by the State's argument that the *Uselton* issues may result in a greater award of compensation than would be fair and just. In this connection the State points out that in response to issue number three, concerning value of the remainder after the taking, the jury found $710,000, which was $30,500 below the lowest figure estimated by either of the expert witnesses, and that this unreasonably low figure produced an unreasonably high compensation award, which the trial court recognized by ordering a remittitur of $30,500. We do not see how this unreasonably low figure found in answer to issue number three can be said to have resulted from submission of *Uselton* issue number one (value of whole tract) in place of *Carpenter* issue number two (value of remainder before taking). Under either *Uselton* or *Carpenter,* the form cf issue number three is substantially the same.

In short, we conclude that the *Uselton* submission is more likely to result in full compensation for the taking, but is not likely to result in more compensation than would be fair and just. Consequently, the State will not be heard to complain that it has been harmed by the *Uselton* issues.

On another trial, however, we suggest a modification of the "severed land" instruction in issue number two. That instruction was suggested in *Carpenter* to avoid overlapping findings of damages that might result if the jury should consider severance damage to the remainder in valuing the part taken and again in valuing the remainder after the taking. In *Uselton,* the trial court employed the "severed land" instruction in its issue number two, concerning value of the part taken, and the Supreme Court affirmed, but no point was raised concerning this issue or this instruction.

We conclude that the "severed land" instruction is not necessary because no possibility of overlapping findings of damages exists under the *Uselton* submission. If the jury should include severance damage to the remainder in valuing the part taken, the error would be offset by a lower computed value of the remainder before the taking, and, therefore, a lower figure for damages to the remainder. This offset would necessarily occur because the value of the remainder before the taking is computed by subtracting the value of the part taken from the value of the whole, and if the jury finds too high a value for the part taken, the damages to the remainder would be reduced by an equal amount. Thus the same damage could not be included twice. The same process of subtraction, however, would not necessarily correct any error the jury might make if the "severed land" instruction is used and is interpreted literally by the jury. In that case the jury could well make an inadequate finding of the value of the part taken, and yet no offset would occur if the evidence shows benefits to the re-

mainder as a result of the taking and the jury finds a value for the remainder after the taking in an amount greater than the computed value of the remainder before the taking.

■ For these reasons we conclude that in the *Uselton* submission, the "severed land" instruction is not required and may be prejudicial to the landowner. Moreover, it may be confusing to expert witnesses in that it tends to prevent them from including in the value of the part taken any additional value it may have as a part of the whole. Therefore, we suggest that in place of the phrase "considered as severed land," the trial court use the words "considered entirely apart from the increase or decrease in value of the remaining land." This is the true meaning of the "severed land" instruction, as the Supreme Court explained in State v. Walker, *supra*. This modified instruction will avoid the possibility, which troubled the *Carpenter* court, that the jury might include severance damage to the remainder in valuing the part taken, and will also avoid the possibility that the jury might find the value of the part taken to be materially less than its value when considered as a part of the whole.

### Evidentiary Matters

■ Another question presented which may arise on another trial is the court's admission of the testimony of the landowner's appraiser concerning a sale from Farmers & Merchants Compress & Warehouse Company to Willowbrooks Company. This sale was not comparable because: (1) the land was not zoned as floodplain, (2) it had prominent street frontage, (3) the sale occurred over three years after the date of taking in the present case, and (4) the price was $48,000 per acre, almost four times the highest estimate of the value of the land here in question. Because of these dissimilarities, we hold that this sale was beyond the range of the trial court's discretion in admitting evidence of similar sales to show the basis of the opinion of the expert witness. City of Garland v. Joyce, 462 S.W.2d 86, 88 (Tex. Civ.App.—Waco 1970, writ ref'd n. r. e.); and *see* Hays v. State, 342 S.W.2d 167 (Tex.Civ.App.—Dallas 1960, writ ref'd n. r. e.).

■ The State also complains of exclusion of three photographs showing portions of the land in question covered by water. These pictures were made approximately five months after the date of taking and were excluded on the ground that the landowner no longer had control of the property. There was testimony, however, that no physical change had occurred on the land after the day of taking and before the photographs were made. Testimony also showed that the photographs were accurate representations of the scene. This evidence was a sufficient predicate for admission of the photographs. McRoy v. Riverlake Country Club, Inc., 426 S.W.2d 299, 305 (Tex.Civ.App.—Dallas 1968, writ ref'd n. r. e.); 2 McCormick and Ray, Texas Law of Evidence § 1465, at 319 (1956).

The fact that the State had control of the property after the date of taking would not render the photographs inadmissible unless some change was made in the physical characteristics of the land. Although the landowner argues that exclusion of these photographs was not prejudicial because all witnesses testified that the land was subject to flooding, the landowner's appraiser minimized the flooding and said that he had seen no evidence of it. If a similar situtation arises on another trial, these photographs should be admitted.

Reversed and remanded.